FILED

2016 NOV -8  AM 10: 13

BARBARA WHITELEY
COUNTY & CIRCUIT CLERK
SCOTT COUNTY, ARKANSAS

IN THE CIRCUIT COURT OF SCOTT COUNTY, ARKANSAS
CIVIL DIVISION

REBECCA A. GLENN                                          PLAINTIFF

VS.                        CASE NO. 64 CV-2016-94 div (III)

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA;
THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC
ACCOUNTANTS; THE AMERICAN INSTITUTE OF
CERTIFIED PUBLIC ACCOUNTANTS INSURANCE TRUST;
THE AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS INSURANCE LONG TERM
DISABILITY INCOME PLAN; AFFINITY INSURANCE
SERVICES, INC. d/b/a AON INSURANCE SERVICES        DEFENDANTS

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Rebecca A. Glenn, by and through her undersigned

attorney, G.E. Bryant III "Trae," of Medlock and Gramlich, LLP and for her cause of

action against the Defendants, THE PRUDENTIAL INSURANCE COMPANY OF

AMERICA;    THE    AMERICAN    INSTITUTE    OF    CERTIFIED    PUBLIC

ACCOUNTANTS;    THE    AMERICAN    INSTITUTE    OF    CERTIFIED    PUBLIC

ACCOUNTANTS    INSURANCE    TRUST;    THE    AMERICAN    INSTITUTE    OF

CERTIFIED    PUBLIC ACCOUNTANTS INSURANCE LONG TERM DISABILITY

INCOME PLAN; AFFINITY INSURANCE SERVICES, INC. d/b/a AON INSURANCE

SERVICES states and alleges as follows:

## JURISDICTION AND VENUE

1. At all times material hereto, the plaintiff, was a resident and citizen of Waldron in

   Scott County, Arkansas

2. Separate Defendant, The Prudential Insurance Company of America (herein referred to as "Prudential") is an insurance company, which is licensed to do business in, and which does business in the State of Arkansas.

3. Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA registered agent for service of process is The Corporation Company 124 West Capitol Avenue Suit 1900 Little Rock, AR 72201-3726.

4. That the THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS is a foreign corporation organized in the District of Columbia and the registered agent is Corporation Service Company 1090 Vermont Ave. NW, Washington District of Columbia, 20005.

5. THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS INSURANCE TRUST is an affiliate of THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.

6. That Plaintiff, Rebecca A. Glenn, was an Accountant and member of Separate Defendant The American Institute of Certified Public Accountants (herein referred to as "AICPA").

7. That the AICPA offers "significant members-only discounts on products and services (including insurance offered through Aon);" (information provided on the AICPA Member Insurance Programs and AON Page at http://www.cpai.com/about-us/about-aicpa).

8. That Aon Insurance Services is the brand name for the brokerage and program administration operations of Defendant, Affinity Insurance Services, Inc. (AR 244489) d/b/a Aon Insurance Services (herein collectively referred to as AON)

and is licensed to do business in, and which does business in, the State of Arkansas

9. That the Registered agent for service of process for AON AFFINITY INSURANCE SERVICES, INC. d/b/a AON INSURANCE SERVICES is The Corporation Service Company 300 Spring Building, Suite 900 300 S. Spring Street Little Rock, AR 7220.

10. Defendant, THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS INSURANCE LONG TERM DISABILITY INCOME PLAN, agent for service is the Plan Administrator, Defendant Prudential, whose registered agent for service of process is The Corporation Company 124 West Capitol Avenue Suit 1900 Little Rock, AR 72201-3726.

11. This cause of action arises out of the Defendant(s) conducting business within the State of Arkansas.

12. That jurisdiction and venue are proper

13. That Plaintiff purchased a Long Term Disability Coverage Plan through AICPA and AON.

14. At all times material hereto, the Plaintiff, Rebecca A. Glenn, was insured through a line of coverage, which included Long Term Disability (herein referenced to as "LTD") benefits, under the Group Contract Policy Number GZ-14273, Control Number 16430, Certificate Number 0000696949 issued by Defendant, Prudential.

15. Defendant, Prudential, acted as the Claims Administrator of The American Institution of Certified Public Accountants Insurance Trust Long Term Disability Income Plan (herein referred to as "The Plan"). The Plan includes benefits that

provide financial protection through payment of a portion of a claimant's income while they experience a long period of disability. (Please see attached as Exhibit "A" and incorporated herein as through written word for word a true and accurate copy of The Plan).

16. The Contract Holder (defined by the policy/plan as meaning the trust to whom the Group Policy is issued) is Defendant, The American Institution of Certified Public Accountants Insurance Trust (herein referred to as AICPA Insurance Trust).

17. Plaintiff's request/claim for LTD benefits pursuant to the Plan was assigned Claim Number 11935522.

18. Defendant, Prudential, as the Claims Administrator, "has the sole discretion to interpret the terms of the Group Contract to make factual findings, and to determine eligibility benefits." (Please see attached as Exhibit "B" and incorporated herein as through written word for word a true and accurate copy of The Claims and Appeals Section, *see* page 2).

19. Decisions by Defendant, Prudential, as Claims Administrator, to provide or deny benefits, "shall not be overturned unless arbitrary and capricious." (*see* Exhibit "B" page 2).

20. That provisions of the Plan are void in that they attempt to deprive Plaintiff of her right to a jury trial concerning the facts arising under the policy and/or contract Arkansas Code Annotated §23-79-203:

   a. (a) No insurance policy or annuity contract shall contain any condition, provision, or agreement which directly or indirectly deprives the insured

or beneficiary of the right to trial by jury on any question of fact arising under the policy or contract.

b. (b) All such provisions, conditions, or agreements shall be void.

21. That the provisions of the Plan establishing an arbitrary and capricious standard are inconsistent with A.C.A §23-79-203 and therefore unenforceable.

22. That provisions of the Plan establishing Defendant, Prudential, as the fact finder is inconsistent with the laws and statutes of the State of Arkansas, specifically A.C.A §23-79-203, and therefore unenforceable.

23. Defendant, Prudential, was responsible, as the Plan Administrator, for collections of the premiums owed by Plaintiff for coverage. (*see* Exhibit "A" p. 9)

24. Defendant, Prudential, was responsible to make payments for benefits awarded. (*see* Exhibit "A" page 24).

25. Defendant, Prudential, upon information and belief, was at all times material to this action, the designated plan fiduciary and administered AICPA Insurance Trust Long Term Disability Income Plan (The Plan).

26. That upon information and belief pursuant to the Plan and benefits secured by Plaintiff's purchase of the Plan she was to receive monthly LTD benefits in the amount of four thousand dollars ($4,000.00).

27. The Plan states that prior to receiving benefits Plaintiff must be continuously disabled through her Elimination Period. (*see* Exhibit "A" p. 14).

28. The Plan required Plaintiff provide written notice no later than ninety (90) days after the Elimination Periods ends. (*see* Exhibit "A" p. 22).

29. That AON Insurance Claims Division assisted Plaintiff in filing her claim for benefits

30. That upon information and belief Defendant, AON, and Defendant, AICPA, received notice of decisions by Defendant, Prudential, and were involved and/or consulted concerning denial determinations.

31. For purposes of the LTD claim Defendant, Prudential, established Plaintiff's disability date as June 1, 2013.

32. The Plan defines disability as the follows: (*see* Exhibit "A" page 13-14).

    a. You (Ms. Glenn) are disabled when Prudential determines that, due to your **sickness** or **injury**:
        i. You are unable to perform the **material and substantial duties** of your **own occupation**;
        ii. You are under the **regular care of a doctor**; and
        iii. You are not working at any job for wage or profit

    b. **Material and Substantial duties** means the duties that:
        i. Are normally required for the performance of your own occupation; and
        ii. Cannot be reasonably omitted or modified

    c. **Own Occupation** means the occupation you are normally performing when your disability occurs

    d. **Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the Plan.

    e. **Regular Care** means:
        i. You personally visit a doctor as frequently as is medical required according to generally accepted medical standards to effectively manage and treat your disabling condition(s); and
        ii. You are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards

    f.  Doctor means a person who is performing tasks that are within the limits of his or her medical licenses; and

         i.  is licenses to practice medicine and prescribe and administer drugs or to perform surgery; or

        ii.  has a doctoral degree in Psychology (Ph. D. or Psy.D.) whose primary practice is treating patients; or

      iii.  is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction

33. That Defendant, Prudential, as the Claim Administrator makes initial determinations of benefits and processes appeals through the regulations and procedures outlined in The Claims and Appeals Section, (*see* Exhibit B):

    a.  **Determination of Benefits:**

         i.  Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed.

        ii.  If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

            1.  the specific reasons for the denial,

            2.  references to the specific plan provisions on which the benefit determination was based,

            3.  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

            4.  a description of Prudential's appeal procedures and applicable time limits; and

            5.  if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

b. **Appeals and Adverse Determinations:**

    i. If your (Ms. Glenn's) claim for benefits is denied….. You may submit with your appeal any written comments, documents, records and any other information relating to your claim

    ii. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

    iii. A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by Prudential, utilizing individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

    iv. Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period.

    v. If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

        1. the specific reason(s) for the adverse determination,

        2. references to the specific plan provisions on which the determination was based,

        3. a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

        4. a description of Prudential's review procedures and applicable time limits,

        5. a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

        6. a statement describing any appeals procedures offered by the plan.

    vi. If the appeal of your benefit claim is denied….

        1. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim.

        2. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

        3. Prudential shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request.

This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the Initial 45-day period

4. If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

34. Plaintiff's initial claim included the following reasons for disability; Primary: osteoarthritis, Secondary: lat. epicondylitis elbow, among other claims. (Please see attached as Exhibit "C" and incorporated herein as through written word for word a true and accurate copy of Plaintiff' initial application for benefits).

35. That in a letter dated March 11, 2014 Defendant denied Plaintiff's request for LTD benefits. (Please see attached and incorporated herein as through written word for word a true and accurate copy of the March 11, 2014 Denial letter as Exhibit "D").

36. Per the Plan's requirement's Plaintiff filed her First Administrative Appeal requesting reconsideration; with her appeal Plaintiff included additional medical records and reasons supporting her claim.

37. That in a letter dated October 24, 2014 Defendant denied Plaintiff's First Appeal for LTD benefits. (Please see attached and incorporated herein as through written word for word a true and accurate copy of the October 24, 2014 Denial letter as Exhibit "E").

38. That Plaintiff elected to file a Second Appeal (in which the plan agrees that any statute of limitations or other defense based on timeliness is tolled in the time that the appeal is pending *see* Exhibit "B"), requesting reconsideration, accompanied

by additional medical records, reasons supporting disability and notes clarifying mistakes within the previous denial letter.

39. That Defendant, Prudential, stated to Plaintiff that certain documents were necessary to complete a review and that they had not been received to secure an extension of time for the review. (Please see attached and incorporated herein as through written word for word a true and accurate copy of the August 3, 2015 Extension letter as Exhibit "F").

40. That Defendant, Prudential, denied Plaintiff's request for documents and stated that the requested documents were not within the possession of Defendant.(*see* Exhibit "F").

41. That upon information and belief Defendant, Prudential, possessed the requested documents at the time the request was made.

42. That in a letter dated August 10, 2014 Defendant denied Plaintiff's Second Appeal. (Please see attached and incorporated herein as through written word for word a true and accurate copy of the August 10, 2014 Denial letter as Exhibit "G").

43. That during the appeal process Plaintiff made multiple request for information from Defendant, Prudential. The information requested included but was not limited to Defendant's complete claim file, medical documents, information establishing governing laws and regulations, the Plan, correspondence claim notes, memos, internal reviews, third party reviews, claim analysis and Booklet Certificates.

44. Plaintiff's requests were made in good faith so as to assist her in proceeding with her claim.

45. Defendant, Prudential, provided certain information that Plaintiff relied upon in her claim appeals and this legal action.

46. Defendant, Prudential, provided documentation evidencing and identifying Plaintiff's Plan as a NonErisa Plan (Please see attached and incorporated herein as through written word for word a true and accurate copy of Defendant SOAP Notes as Exhibit "H").

47. As a NonErisa plan the laws of the State of Arkansas are not pre-empted by Federal laws and regulations, including provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

48. That Defendants, AICPA Insurance Trust and Aon Insurance Services, were notified of determinations made and upon information and belief were involved in benefit decisions. (Please see attached and incorporated herein as through written word for word a true and accurate copy of Prudential's letter to Aon insurance Services and AICPA Insurance Trust as Exhibit "I").

49. That Plaintiff has made demands for payments of benefits pursuant to the Plan, all demands have been denied.

### COUNT ONE: BREACH OF CONTRACT

50. Plaintiff incorporates by reference the previous allegations set forth above and further states:

51. Defendants, collectively and individually, their agents and employees, breached its contract with Plaintiff by denying her long term disability benefits under the Plan in the following respects, among others:

    a.   Failing to notification Plaintiff of its adverse benefit decision in a manner calculated to be understood by the claimant;

    b.   Failing to state precisely what additional medical evidence is required for her to perfect her claim, including a statement specifying why each piece of additional evidence is necessary;

    c.   failing to provide documentation upon request;

    d.   failing to consider medical documentation provide;

    e.   failing to utilizing individuals not involved in the initial benefit determination during appeals;

    f.   The Plan Administrator's denials of benefits to Plaintiff was based largely on a "paper review" of medical records;

    g.   The Plan Administrator's failure to take into consideration medical records produced supporting Plaintiff's disability;

    h.   The Plan Administrator failure and refusal to abide by findings made in previous denial's during subsequent appeals made by Plaintiff

    i.   The Plan Administrator failed to provide a reasoned denial, when it based its decision on a paper review from an alleged, independent reviewer without further explanation or differentiation;

j. Defendant's failure to take into account everything submitted by the Plaintiff, including treating physicians' statements and opinions, and the effects of Plaintiffs medications;

k. failing to correct misstatements and miss-characterization concerning medical records;

l. relying on misstatements and miss-characterization concerning medical records in denying Plaintiff's claim for benefits;

m. Continuing to rely on misstatements and miss-characterization concerning medical records in denying Plaintiff's claim for benefits after being notified by Plaintiff that statements and characterizations as stated by Defendant in the denial letters were incorrect;

n. Unreasonably and without justification denying Plaintiff's claim for LTD benefits, and asserting improper bases for doing so, despite knowing or possessing sufficient knowledge to know that Plaintiff was totally disabled and qualified for such benefits under the terms and conditions the Plan, and doing so in order to boost its profits.

52. Defendants' conduct, collectively and individually, constitutes a breach of contract and a breach of the duty of good faith and fair dealing.

53. Defendant(s)' conduct is a breach of the terms of The Plan issued to Plaintiff. As a result of each Defendant(s) breach of the Plan contact, Plaintiff has been damaged, as will be shown by the proof presented at the trial of this matter.

54. That upon information and belief Plaintiff has failed to receive benefits in an amount that exceeds seventy-five thousand dollars ($75,000.00).

55. Plaintiff, Rebecca A. Glenn, is additionally entitled to recover her expenses, reasonably incurred attorney's fees and a 12% penalty.

56. Plaintiff, Rebecca A. Glenn, is additionally entitled to recover pre-judgment interest as well as post judgment interest on any amounts awarded.

## COUNT TWO: BREACH OF FIDUCIARY DUTY

57. Plaintiff incorporates by reference the previous allegations set forth above and further states:

58. That Defendant, Prudential, as the insurer owed Plaintiff, the insured, a fiduciary duty to deal with her honesty, a responsibility to deal fairly and in good faith, a requirement of loyalty and an obligation to adhere to the reasonable expectations of the parties.

59. Defendant, Prudential, insuring the disability Plan, collecting payments for the Plan, making the benefits decision, and acting as Plan Administrator in denying payment of benefits, resulting in a direct financial benefit, constituting a presumptive conflict of interest and resulted in benefit for Defendant, Prudential, at the expenses of Plaintiff.

60. Defendant, Prudential's, conduct concerning Plaintiff's claim does not meet the standard that a fiduciary deal fairly, act in good faith, with honesty or loyalty.

61. That each Defendant, collectively and individually, owed a duty to deal honestly, a responsibility to deal fairly, act in good faith, an obligation of loyalty and an obligation to adhere to the reasonable expectations of the parties, including with Plaintiff.

62. That Defendants, AICPA Insurance Trust and Aon Insurance, were provided

notice of Plaintiff's denials and fail to ensure that benefit decisions were done in

such a way as to remain honestly, fair, in good faith, or act with the requirement

of loyalty and an obligation to adhere to the reasonable expectations of the parties.

63. Defendants collectively and individually, breached their fiduciary duty to strictly

avoid self-dealing.

64. That the breach of fiduciary duty by Defendant, Prudential, was a direct and

proximate cause of Plaintiff's damages and failure to receive benefits.

65. That the breach of fiduciary duty by Defendant, AICPA Insurance Trust, was a

direct and proximate cause of Plaintiff's damages and failure to receive benefits.

66. That the breach of fiduciary duty by Defendant, AON, was a direct and

proximate cause of Plaintiff's damages and failure to receive benefits.

67. That the breach of fiduciary duty by Defendant, AICPA, was a direct and

proximate cause of Plaintiff's damages and failure to receive benefits.

68. By virtue of each breach of fiduciary duty of each Defendant, separately and

collectively, the Plaintiff has been damaged in the sum and amount that the proof

presented at the trial of this matter warrants.

## COUNT THREE: BAD FAITH

69. Plaintiff incorporates by reference the previous allegations set forth above and

further states:

70. That upon receipt of the initial Denial Plaintiff submitted her first request for

reconsideration.

71. Defendant, Prudential, received Plaintiff's First Appeal and issued a Second

Denial of benefits on October 24, 2014 Denial letter (Exhibit "E"). Though

benefits were denied Defendant found Plaintiff suffered disabilities to her hands

and could not sit for prolonged periods of time:

> "evidence of significant findings which would prevent
> using your hands for handling, fingering or sitting for
> prolonged periods of time" (*see* Exhibit "E" October 24,
> 2014 Denial letter)

72. Plaintiff filed a Second Appeal providing Defendant with additional arguments,

documents and medical records based upon Defendant's statements and findings

as stated in the October 24, 2014.

73. Within her Second Appeal Plaintiff informed Defendant, Prudential, that she

agreed with the findings as to her hands and no being able to sit for prolonged

periods.

74. Defendant, Prudential, denied Plaintiff's Second Appeal in the August 10, 2015

Denial letter (Exhibit G). Within which Defendant, Prudential informed Plaintiff

statements by Defendant, upon which Plaintiff relied, were made due to a

"typographic error:"

> "You indicated the October 24, 2014 letter (Exhibit E)
> indicated "the medical records do provide evidence of
> significant flings which would prevent your hand from
> handling and fingering or sitting for prolonged periods of
> times."
>
> "Regarding the sentence on page six in the October 24,
> 2014 letter which states: You indicated the October 24,
> 2014 letter (Exhibit E) indicated 'the medical records do
> provide evidence of significant flings which would prevent
> your hand from handling and fingering or sitting for
> prolonged periods of times;' please note this was a
> typographical error."
> (August 10, 2015 Denial letter - Exhibit G).

75. Pursuant to the Plan, when a claim is denied, the denial is to state the specific reason upon which the adverse decision is made and indicate additional records a LTD Claimant needs to produce if they appeal. (*see* Exhibits A & B).

76. LTD Claimants, in preparing an appeal, rely upon the findings outlined within a denial letter, the specific reasons for the denial, and the statements of what additional information is necessary.

77. Defendant, Prudential, knows LTD Claimants rely upon information within a Denial letter to assist in collection of materials and arguments to support their Claim on Appeal.

78. As a LTD Claimant, Plaintiff relied on Defendant, Prudential's, October 24, 2014 Denial letter (Exhibit E) that stated Plaintiff suffered disabilities as it relates to her hands and sitting limitation

79. Defendant knew of Plaintiff's reliance but took no actions to correct the alleged "typographic error" in the October 24, 2014 letter.

80. That Defendant, Prudential, did not inform Plaintiff of the "typographic error," until issuing the final denial, preventing Plaintiff the opportunity to present additional evidence supporting her hand disabilities and sitting limitations

81. Such act is an affirmative act of misconduct because Defendant never had an intention of making a decision to provide benefits.

82. Defendant, Prudential, did not take action to correct errors and misstatements within denial letters pointed out by Plaintiff, instead Defendant continued to rely on said misstatements and mischaracterizations in the final denial

83. Such act is an affirmative act of misconduct because Defendant never had an intention of making a decision to provide benefits.

84. That Denial letter's state that Claimants (Plaintiff) are entitled to receive, upon request and free of charge, copies of all documents, records and other information relevant to a claim.

85. That throughout the appeal process Plaintiff made multiple requests for certain documents relevant to the claim.

86. That Defendant, Prudential, denied Plaintiff access to specifically requested documents stating that the requested documents were not within Defendant, Prudential, and/or its employees and agents' possession.

87. That Defendant, Prudential, requested an extension of time to submit their final decision concerning Plaintiff's last appeal. Plaintiff was informed an extension was being requested as certain records and reports had not been received.

88. Upon Defendant's, Prudential's, request for an extension Plaintiff asked that all documents relating to the extension request and a summary of documents Defendant needed additional time to secure.

89. Defendant, Prudential, stated it was not in the possession of any documents relating to the extension request and therefore none could be produced or summarized for Plaintiff.

90. Plaintiff relied on Defendant's, Prudential's, statement when the decision to grant the extension was made.

91. That upon information and belief Defendant, Prudential, did possess the requested

documents at the time of Plaintiff's request.

92. That Defendant relied upon said documents to deny Plaintiff's claim for benefits.

93. Failure to produce the documents and misleading statements concerning said documents, was an intentional act of misconduct by Defendant, Prudential, meant to delayed Plaintiff from asserting her right to file a legal action prior to completion of the Final Denial and was done so as to allow Defendant additional time to further develop a denial.

94. These actions are an affirmative act of misconduct because Defendant, Prudential, never had an intention of making a decision to provide benefits.

95. Defendant, Prudential's, actions were nothing more than attempt to further delay the Plaintiff and to discourager her from pursing benefits.

96. That the above listed actions by Defendant, Prudential, among others, constitute an affirmative acts of misconduct that are actionable as bad faith.

97. That the action of all other Defendants through their allowance of Defendant Prudential to conduct acts of bad faith while receiving updates upon a Claim's progress/denial and constitute an affirmative acts of misconduct that are actionable as bad faith.

98. By virtue of the bad faith conduct of the Defendant, Prudential, the Plaintiff has been damaged in the sum and amount that the proof presented at the trial of this matter warrants.

99. By virtue of the bad faith conduct of the all other Defendants the Plaintiff has been damaged in the sum and amount that the proof presented at the trial of this

matter warrants.

100.    The bad faith conduct of the Defendant, Prudential, was reckless, willful, wanton, and was taking knowing that it would cause financial harm to, or on behalf of, the Plaintiff.  Such actions are such as to subject the Defendant to exemplary and punitive damages in the sum and amount that the proof presented at the trial of this matter warrants.

101.    The bad faith conducts of the all other Defendants was reckless, willful, wanton, and was taking knowing that it would cause financial harm to, or on behalf of, the Plaintiff.  Such actions are such as to subject the Defendant to exemplary and punitive damages in the sum and amount that the proof presented at the trial of this matter warrants.

## COUNT FOUR: FRAUD

102.    Plaintiff incorporates by reference the previous allegations set forth above and further states:

103.    Pursuant to the Plan, when a claim is denied, the denial is to state the specific reason upon which the adverse decision is made and indicate additional records a LTD Claimant needs to produce if they appeal. (*see* Exhibits A & B).

104.    LTD Claimants, in preparing an appeal, rely upon the findings outlined within a denial letter, the specific reasons for the denial, and the statements of what additional information is necessary.

105.    Defendant, Prudential, knows or should know that LTD Claimants rely upon information within a Denial letter to assist in collection of materials and

arguments to support their Claim on Appeal.

106.     That Defendant, Prudential, made representations of fact within it's Denial

letters which it knew Plaintiff would rely upon in subsequent appeals. That the

facts and statements within Defendant's Denial letters are material to Plaintiff's

appeals, in that Plaintiff provided Defendant additional documents to rebut the

stated reasons for denial in an attempt to secure benefits.

107.     That Defendant, Prudential, repeatedly misstated and mischaracterized

medical documentation provided by Plaintiff and continued to do so after Plaintiff

attempted to draw Defendant's attention to each.

108.     That Defendant, Prudential, informed Plaintiff they had determined she did

in fact have physical impairments, that were disabling, and that she had conditions

limiting her physical abilities.

109.     That Defendant, Prudential, later stated that these statements were a

typographical error, or that they were not supported by medical evidence.

110.     That Defendant, Prudential, had knowledge of these statements and findings.

111.     That Defendant, Prudential, waited until the appeals process was exhausted

to inform Plaintiff that prior findings of physical impairments and limited

physical abilities would not be considered as supporting her claim.

112.     Defendant, Prudential's actions were done in an effort to prevent Plaintiff

from producing further evidence supporting her LTD claim and ensure a denial of

Plaintiff's claim for benefits.

113.     As a proximate result of Defendant, Prudential's, fraud and deceit and the

facts herein alleged, Plaintiff was denied benefits by reason of which Plaintiff has

been damaged in a sum in excess of $75,000.00 for unpaid benefits and in

additional sums and amount that the proof presented at the trial of this matter

warrants.

114.    In doing the acts herein alleged Defendant, Prudential, acted reckless,

willful, wanton, and knowing that it would cause financial harm to, or on behalf

of, the Plaintiff. Such actions are such as to subject the Defendant to exemplary

and punitive damages in the sum and amount that the proof presented at the trial

of this matter warrants.

115.    That Plaintiff is entitled to recover her costs, expenses and attorney fees

incurred.

### NOTICE TO DEFENDANTS

116.    Each Defendant is given notice that it should immediately retain all tape

recordings of communications, all documentation, all notes, all emails or any

other type of correspondences between Defendants, between each Defendant and

the following:

    a.   the office of counsel for the Plaintiff;

    b.   Plaintiff;

    c.   any third party in which Plaintiff's claim was discussed or reviewed;

    d.   prior counsel of Plaintiff;

    e.   any other party or entity in which Plaintiff was a topic of any kind

117.    Failure to maintain such recordings will be considered spoliation of

evidence.

118.    Defendants are given notice that it should immediately take steps to preserve the entire claim file of Plaintiff. Any destruction of any contents of the claim file will be considered spoliation of evidence.

WHEREFORE, the Plaintiff, Rebecca Glenn, prays judgment against the Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS; THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS INSURANCE TRUST; THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS INSURANCE LONG TERM DISABILITY INCOME PLAN; AFFINITY INSURANCE SERVICES, INC. d/b/a AON INSURANCE SERVICES collectively and or individually, in the sum and amount that the proof presented at the trial of this matter warrants for breach of contract; breach of fiduciary duty, bad faith; for a 12% penalty and attorney fees for breach of contract; pre-judgment interest in the maximum amount permitted by law, for post-judgment interest in the maximum amount permitted by law, for compensatory damages in the sum and amount that the proof presented at the trial of this matter warrants; for exemplary and punitive damages in the sum and amount that the fact finder at trial deems to be justified in accordance with constitutional standards; for other such relief requested herein, and for such other relief as is proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully Submitted,
REBECCA A. GLENN

G.E. Bryant III "Trae" ABA# 2013050
Medlock and Gramlich, LLP
105 N. 14th St
P.O. Box 2646
Fort Smith AR. 72901
Phone: (479) 494-5614
Fax: (479) 802-4742

# The American Institute of Certified Public Accountants Insurance Trust

## *All Eligible Participants*

### Long Term Disability Coverage



EXHIBIT

tabbies

A

Prudential

# Disclosure Notice

## FOR ARKANSAS RESIDENTS

Prudential's Customer Service Office:

The Prudential Insurance Company of America
Disability Management Services Claim Division
P.O. Box 13480
Philadelphia, Pennsylvania 19176
1-800-842-1718

If Prudential fails to provide you with reasonable and adequate service, you may contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
1-800-852-5494

## FOR ARIZONA RESIDENTS

**Notice:  This certificate of insurance may not provide all benefits and protections provided by law in Arizona.  Please read this certificate carefully.**

## FOR FLORIDA RESIDENTS

**The benefits of the policy providing your coverage are governed by the law of a state other than Florida.**

## FOR INDIANA RESIDENTS

**Questions regarding your policy or coverage should be directed to:**

**The Prudential Insurance Company of America
(800) 842-1718**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or e-mail:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana  46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

## FOR MARYLAND RESIDENTS

The Group Insurance Contract providing coverage under this certificate was issued in a jurisdiction other than Maryland and may not provide all of the benefits required by Maryland law.

## FOR OKLAHOMA RESIDENTS

Notice: Certificates issued for delivery in Oklahoma are governed by the certificate and Oklahoma laws not the state where the master policy was issued.

## FOR WISCONSIN RESIDENTS

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

Problems with Your Insurance? – If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

**Prudential's Customer Service Office:**

**The Prudential Insurance Company of America**
**Disability Management Services Claim Division**
**P.O. Box 13480**
**Philadelphia, PA 19176**
**1-800-842-1718**

You can also contact the Office of the Commissioner of Insurance, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the Office of the Commissioner of Insurance by contacting:

Office of the Commissioner of Insurance
Complaints Department
P.O. Box 7873
Madison, WI 53707-7873
1-800-236-8517
608-266-0103

**THIS NOTICE IS FOR TEXAS RESIDENTS ONLY**

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

Email: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact Prudential first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener información o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

Email: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con Prudential primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es sólo para propósito de información y no se convierte en parte o condición del documento adjunto.

83500
TXN 1005

(S-1)

# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability.  The amount you receive is based on the amount you earned before your disability began.  In some cases, you can receive disability payments even if you work while you are disabled.  Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | January 1, 2012 |
| **Contract Holder:** | THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS INSURANCE TRUST |
| **Group Contract Number:** | GZ-14273 |
| **Covered Classes:** | All Participants who belong to one of the following Classes listed below and who: (1) are members of the American Institute of Certified Public Accountants, or a qualified State Society; and (2) are less than the Limiting Age (your age on a Contract Anniversary coinciding with or next following your attainment of age 70); and (3) have enrolled for Long Term Disability Coverage* with an elimination period of 13 or 26 weeks. |

Class 1:  Participants who enrolled for Long Term Disability Coverage prior to July 1, 2004.
Class 2:  Participants who enroll for Long Term Disability Coverage on or after July 1, 2004.

For the purpose of Insurance under the Coverage, a Participant shall be considered a member of the American Institute of Certified Public Accountants or a qualified State Society until the expiration of the day prior to the Premium Due Date next following the date he fails to meet criterion (1) above.

*If you are covered for Long Term Disability Coverage on the day before your attainment of age 65, you may choose to continue your Long Term Disability Coverage until you attain age 70.  You may not enroll for Long Term Disability Coverage for the first time once you have attained age 65.

| | |
|---|---|
| **Minimum Hours Requirement:** | Participants must be working at least 17.5 hours per week. |
| **Employment Waiting Period:** | None |
| **Elimination Period:** | For each period of Disability due to Sickness or accidental Injury: Option 1: the first 13 weeks of continuous disability, or Option 2: the first 26 weeks of continuous disability |

See your Specifications Page for the option you selected.

**Benefits begin the day after the Elimination Period is completed.**

83500
CBH-LTD-1016                                                   (16430-13)

1

**Monthly Benefit:**  If you provide evidence of insurability satisfactory to Prudential, you may enroll for one of the Monthly Benefit amounts of Long Term Disability Coverage shown below. If you are a member of only a qualified State Society, you may enroll for a Monthly Benefit up to $3,000. If you are a member of the American Institute of Certified Public Accountants, you may enroll for a Monthly Benefit up to $12,000. If you request an amount over $4,000, this requested amount cannot be more than 65% of your Monthly Earnings, less any monthly disability income benefits for which you are covered or for which you have applied as of the date of your request. (Monthly disability income benefits do not include disability benefits under life insurance that reduce the face amount, no fault auto coverage, social security benefits; disability income plans with sickness benefit durations of one year or less and disability income plans with benefits for accidents only.)

If you elect a Monthly Benefit in excess of $4,000, Prudential will require you to send proof of pre-disability Monthly Earnings upon claim submission. Proof of such earnings includes copies of your IRS federal income tax return, or W-2 forms, or 1099 forms. If the proof does not support the Monthly Benefit amount you elected, your Monthly Benefit amount will be equal to the greater of (a) $4,000; and (b) the Monthly Benefit Amount closest to but not more than 65% of your pre-disability Monthly Earnings. If there is a reduction in the Monthly Benefit amount, excess contributions will be returned.

When your Monthly Benefit is payable for only part of a Calendar Month, it is equal to 1/30 of your Monthly Benefit times the number of days in that part of the Calendar Month that you qualify to receive Long Term Disability benefits.

**Monthly Benefit:**  $1,000; $1,500; $2,000; $2,500; $3,000; $3,500; $4,000; $4,500; $5,000; $6,000; $7,000; $8,000; $9,000; $10,000, $12,000.

Your benefit may be reduced by disability earnings. Some disabilities may not be covered or may be limited under this coverage.

**Maximum Period
of Benefits:**

| The Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| For Disability commencing prior to the Contract Anniversary coinciding with or next following your attainment of age 50 | Until your Disability ends |
| For Disability commencing on or after the Contract Anniversary coinciding with or next following your attainment of age 50, but prior to the Contract Anniversary coinciding with or next following your attainment of age 63 | To the Contract Anniversary coinciding with or next following your attainment of age 65 |
| For Total Disability commencing on or after the Contract Anniversary coinciding with or next following your attainment of age 63 but prior to the Contract Anniversary coinciding with or next following your attainment of age 70 | 24 months |

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**  The long term disability plan is provided to you on a contributory basis. You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage. For a full description please read this entire Group Insurance Certificate.**

**IMPORTANT INFORMATION FOR RESIDENTS OF CERTAIN STATES:** There are state-specific requirements that may change the provisions under the coverage(s) described in this Group Insurance Certificate. If you live in a state that has such requirements, those requirements will apply to your coverage(s) and are made a part of your Group Insurance Certificate. Prudential has a website that describes these state-specific requirements. You may access the website at www.prudential.com/etonline. When you access the website, you will be asked to enter your state of residence and your Access Code. **Your Access Code is 16430.**

If you are unable to access this website, want to receive a printed copy of these requirements or have any questions, call Prudential at 1-866-439-9026.

83500
CBH-LTD-1016

3

(16430-13)

# Table of Contents

BENEFIT HIGHLIGHTS - LONG TERM DISABILITY PLAN ................................................... 1

CERTIFICATE OF COVERAGE .................................................................................... 5

GENERAL PROVISIONS ............................................................................................ 6

LONG TERM DISABILITY COVERAGE – OTHER SERVICES ......................................... 20

LONG TERM DISABILITY COVERAGE – REHABILITATION SERVICES ........................... 21

LONG TERM DISABILITY COVERAGE - CLAIM INFORMATION ..................................... 22

GLOSSARY ........................................................................................................... 25

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

The coverage described in this Certificate provides disability income coverage only. It does NOT provide basic hospital, basic medical, or major medical insurance as defined by the New York State Insurance Department.

## Prudential's Address

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

83500
CERT-1005

5

(S-3)

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;
- to whom Prudential will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Active employment* means you are working for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 17.5 hours per week.

Your worksite must be:

- your usual place of business;
- an alternate work site other than your home unless clear specific expectations and duties are documented; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.

If your employment status is being continued under a severance or termination agreement, you will not be considered in active employment.

*Contract Holder* means the trust to whom the Group Contract is issued.

*Participating Association* means an association which:

- meets the requirements of the Group Contract for inclusion under the Group Contract;
- is reported to Prudential in a written notice from the Contract Holder; and
- is approved by Prudential for inclusion under the Group Contract

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

- you are eligible to become insured for coverage while you are in a covered class;

*Covered class* means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance under Group Contract No. GZ-14273. "Class" means covered class, benefit class, anything related to work, such as position or earnings, or anything related to membership in the Participating Association, which affects the insurance available. If you are a member of more than one Participating Association Included under the Group Contract, for the insurance you will be considered a member of only one of those associations. Your membership with all other Participating Associations will be treated as membership with that one.

## When Does Your Coverage Begin?

Your coverage will begin at 12:01 a.m. on the first day on which:

- you are eligible for coverage; and
- you have enrolled for coverage; and
- you have met the *evidence of insurability* requirement; and
- you have submitted the first premium; and
- you are in active employment. If you are not in active employment on the date your coverage would normally begin, it will begin on the date you return to active employment.

But, if your request for coverage is processed on or before the 13th day of the month, the coverage will be effective on the first day of the month. If Prudential approves your request but that request is not processed until the 14th day of the month or later, the coverage will be effective on the first day of the following month. However, if you enroll for coverage online your coverage will be effective on the following Plan Entrance Date.

Neither the Participating Association nor the Contract Holder may waive the evidence of Insurability requirement for any reason.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.

## When Is Evidence of Insurability Required?

In any of these situations, you must give evidence of insurability. This requirement will be met when Prudential decides the evidence is satisfactory.

- You choose to enroll for long term disability coverage.
- You enroll after any of your insurance under the Group Contract ends because you did not pay a required premium.
- You enroll for an increase in your coverage.

- You change your elimination period option from 26 weeks to 13 weeks.

- You have not met a previous evidence requirement to become covered under any Prudential group contract for members of the Participating Association.

An evidence of insurability form can be obtained from the Contract Holder or the Plan Administrator.

## How Do You Enroll For Coverage?

You must enroll on a form approved by Prudential and agree to pay the required contributions.

## What Is the Maximum Monthly Benefit Amount That You May Enroll For?

If you are a member only of a qualified State Society, you may enroll for a monthly benefit amount of $3,000.

If you are a member of the American Institute of Certified Public Accountants, you may enroll for a monthly benefit of $12,000  If you request an amount over $4,000, this requested amount cannot be more than 65% of your *monthly earnings*, less any monthly disability income benefits for which you are covered or for which you have applied as of the date of your request. (Monthly disability income benefits do not include disability benefits under life insurance that reduce the face amount, no fault auto coverage, social security benefits, disability income plans with sickness duration of one year or less and disability income plans with benefits for accidents only.)

If you elect a monthly benefit in excess of $4,000, Prudential will require you to send proof of your monthly earnings upon claim submission.  Proof of such earnings includes copies of your IRS federal income tax return, and W-2 forms, or 1099 forms.  If the proof does not support the monthly benefit you selected, your monthly benefit amount will be equal to the greater of:

(a)  $4,000; and

(b)  the monthly benefit amount closest to, but not more than, 65% of your monthly earnings.

If there is a reduction in the monthy benefit amount, excess contributions will be returned.

See your Specifications Page for the monthly benefit amount approved by Prudential and for which you are insured under this plan.

*Monthly earnings* means the greater of (1) or (2) where (1) equals one-twelfth of the average of your salary and net earned income from self-employment and trade or business activities as reported to the Internal Revenue Service for income tax purposes for the two calendar years preceding the calendar year during which the election is made, and (2) equals one-twelfth of your annual salary rate in effect on the date of election; or if the preceding item (2) is not determinable, one-twelfth of your actual earnings for the twelve calendar months immediately preceding the date of election; or if this is also not determinable, your actual earnings for the calendar month preceding the date of election. Salary, as used herein, shall be based on your earnings from your employer(s), to include bonus and commissions, but exclusive of overtime pay, for a normal work week not exceeding forty hours.  Monthly earnings shall be satisfied at the time of election and at each renewal date and at the time of claim.  Residents of Puerto Rico who do not report to the Internal Revenue Service may substitute their submissions to the Bureau of Income Tax of the Commonwealth of Puerto Rico.  Date of election, as used herein, shall be the later of your current benefit level election effective date or the most recent annual benefit level renewal effective the January 1 on or preceding your date of disability.

83500
CGP-10004                                                                    (16430-13)

8

## How Do You Pay For Your Coverage?

As this is contributory coverage, the Plan Administrator will send you a bill for the premium amount you owe.

## When Are Premiums Due?

Premiums are due in advance, on the Premium Payment Date. The Premium Payment Date for the first premium is on the Effective Date of Coverage.

You are entitled to a period of 90 days for the payment of any premium due except the first. This period is known as the grace period. If you do not pay any premium by the end of the grace period, your coverage under the Group Contract will end when the grace period ends. You are liable to pay premiums for the time your coverage is in force.

## When Will We Adjust Your Premium Amount?

If an age is used to determine the premium for your coverage, and the age is found to be in error, we will adjust the premium to reflect the correct age. Any difference between the premium paid and the premium required on the basis of the correct age will be paid as follows:

1. If the adjustment results in an increased premium, the difference will be paid by you when notified by Prudential.

2. If the adjustment results in a decreased premium, the difference will be refunded by Prudential.

If the change in age affects the amount of your coverage, we will change the amount on the basis of the correct age. Any premium adjustment will take this into account.

## When Will Your Premium Be Waived?

No premiums are required for your coverage while you are receiving long term disability benefits under the plan.

## When Will We Change Your Premium Rates?

We reserve the right to change the premium rates for your Covered Class at any time for reasons which affect the risk which we have assumed. If we decide to change the premium rates for your Covered Class, we will notify you in writing at least 31 days before the premium is changed.

## When May Coverage Be Reinstated?

If your coverage under the Group Contract ends because you did not pay any premium by the end of its grace period, you may be eligible to reinstate your coverage subject to these rules.

1    You must request reinstatement within 180 days of the date of the first unpaid premium

2    You must pay all overdue premiums.

3.  If you request reinstatement more than 90 days after the end of the grace period, you must complete a Request for Reinstatement with evidence of good health.

If Prudential approves your request, and your request is then processed on or before the 13th day of the month, the reinstatement will be effective on the first day of the month. If Prudential approves your request but that request is not processed until the 14th day of the month or later, the reinstatement will be effective on the first day of the following month. The How Can Statements Made in Your Application for this Coverage Be Used? provision will apply as of the date your reinstatement is effective.

## When May You Elect to Change Your Coverage?

Once your coverage begins, you may elect to make changes to the options in your coverage at any time. You must request the changes on a form approved by Prudential and agree to pay the required premium. For increases, you must submit evidence of insurability that is satisfactory to Prudential.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, a request to increase or add to your coverage will take effect on the latest of:

1.  the effective date of the change;

2.  the date Prudential approves your request including the evidence of insurability; and

3.  the date you return to active employment, if you are not in active employment due to injury or sickness.

But, if your request to increase or add to your coverage is processed on or before the 13th day of the month, the increased or additional coverage will be effective on the first day of the month. If Prudential approves your request but that request is not processed until the 14th day of the month or later, the increased or additional coverage will be effective on the first day of the following month.

Any decrease in coverage will take effect on the premium due date following the date the Contract Holder receives your written request. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date on which you are no longer a member of the covered classes;

- the date on which you are no longer working on a *full-time basis*;

83500
CGP-10004

10

(16430-13)

- the date your covered class is no longer covered; or

- the last day of the period for which you paid premiums, if any is not paid by the end of the grace period.

You must notify Prudential as soon as reasonably possible if you terminate your membership. Your coverage under the Group Contract will end on the date indicated above even if you subsequently make premium payments.

Cancellation of the Group Contract or a plan will not affect a payable claim that occurs prior to the cancellation of the Group Contract or a plan.

*Full-time basis* means you are working at least 17.5 hours per week.

## Can this Coverage be Assigned?

This coverage may not be assigned.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does the Contract Holder or the Participating Association Act as Prudential's Agent?

For purposes of the Group Contract, the Contract Holder and the Participating Association act on their own behalf. Under no circumstances will the Contract Holder or the Participating Association be deemed the agent of Prudential.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you make in a signed application for coverage or any increase in that coverage a representation and not a warranty. If any of the statements you make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the effective date of the coverage or increase in coverage.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the coverage or any increase in that coverage has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this

If the Contract Holder or the Participating Association gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that, due to your *sickness* or *injury*:

- you are unable to perform the *material and substantial duties* of your *own occupation*;

- you are under the *regular care* of a *doctor*; and

- you are not working at any job for wage or profit.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and

- doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your own occupation; and

- cannot be reasonably omitted or modified.

*Own occupation* means the occupation you are routinely performing when your disability occurs.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that:

- is the direct result of an accident;

- is not related to any cause other than the accident; and

- results in immediate disability.

Disability must begin while you are covered under the plan.

83500
CBI-LTD-10067

13

(16430-13)

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients, or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Monthly earnings* means the greater of (1) or (2) where (1) equals one-twelfth of the average of your salary and net earned income from self-employment and trade or business activities as reported to the Internal Revenue Service for income tax purposes for the two calendar years preceding the calendar year during which the election is made, and (2) equals one-twelfth of your annual salary rate in effect on the date of election; or if the preceding item (2) is not determinable, one-twelfth of your actual earnings for the twelve calendar months immediately preceding the date of election; or if this is also not determinable, your actual earnings for the calendar month preceding the date of election. Salary, as used herein, shall be based on your earnings from your employer(s), to include bonus and commissions, but exclusive of overtime pay, for a normal work week not exceeding forty hours. Monthly earnings shall be satisfied at the time of election and at each renewal date and at the time of claim. Residents of Puerto Rico who do not report to the Internal Revenue Service may substitute their submissions to the Bureau of Income Tax of the Commonwealth of Puerto Rico. Date of election, as used herein, shall be the later of your current benefit level election effective date or the most recent annual benefit level renewal effective the January 1 on or preceding your date of disability.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*.

If you are enrolled for Option 1, your elimination period is 13 weeks. But, if you are enrolled for Option 2, your elimination period is 26 weeks.

See your Specifications Page for the option you selected.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

83500
CBI-LTD-10067

(16430-13)

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable. Any amount that has not been paid by the end of the period for which Prudential is liable will be paid immediately when we receive proof of loss.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

Your monthly benefit is shown on your Specifications Page.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

## How Much Will Prudential Pay If You Work While You Are Disabled?

While you are receiving long term disability benefits under this coverage you may ask Prudential to place you on rehabilitation status. If your request is approved by Prudential, being on rehabilitation status means that you may work for wage or profit and continue to receive some benefits under this coverage. Such work will not, in itself, prevent you from meeting the requirements for disability.

To be placed on rehabilitation status, you must make advance written request to Prudential. Prudential will decide if you will be placed on rehabilitation status and for how long. You will be notified in writing.

Your monthly payment while you are on rehabilitation status will be calculated as follows:

1. The monthly benefit that would be payable under this coverage had you not been working for wage or profit minus 50% of your monthly *disability earnings*.

2. Add the answer in item 1 to your monthly disability earnings.

If the answer in item 2 is less than 125% of your monthly benefit if you had not been working for wage or profit, Prudential will not further reduce your monthly payment.

If the answer in item 2 is equal to or exceeds 125% of your monthly benefit if you had not been working for wage or profit, Prudential will subtract the amount over 125% from your monthly payment.

If your monthly disability earnings alone equal or exceed 125% of your monthly benefit if you had not been working for wage or profit, you will cease to be on rehabilitation status and your claim will end.

*Disability earnings* means the earnings you receive while you are disabled and working for wage or profit.

You must give Prudential any proof needed to confirm your earnings.

83500
CBI-LTD-10067

(16430-13)

15

## Will Your Payment Be Adjusted by a Cost of Living Increase?

If your monthly benefit is $4,500 or more and you become disabled on or after January 1, 2009, your monthly benefit may be increased on July 1 of a calendar year if you are disabled and not working at any job for wage or profit on that date, and you were disabled throughout all of the 12 months before that date.

If you were insured under the plan as of December 31, 2008 and remain covered and subsequently become disabled, you will be eligible for cost of living adjustments on benefit amounts of $3,500 to $12,000. If you were insured as of December 31, 2008 for a $4,000 benefit amount, but you can only satisfy earnings evidence at time of claim for $3,500, you will receive cost of living adjustments on the entire $4,000 benefit.

The portion of any increase in your monthly benefit will be the lesser of:

1. 50% of the annual percentage increase in the Consumer Price Index since July 1 of the preceding calendar year; and

2. 6%

The CPI-W is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

You will not receive more than 5 cost of living adjustments while you continue to receive payments for your disability.

If you receive one or more cost of living adjustments to your monthly benefit and you subsequently recover from your disability and return to work, the amount of your monthly benefit will be restored to that amount in effect on the date prior to the date any cost of living adjustment was applied to your monthly benefit.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment varies depending upon your age on the date your disability begins, as shown below:

| Your Age on Date Disability Begins | Your Maximum Period of Payment |
|---|---|
| For disability commencing prior to the contract anniversary coinciding with or next following your attainment of age 60 | For your lifetime |
| For disability commencing on or after the contract anniversary coinciding with or next following your attainment of age 60 but prior to the contract anniversary coinciding with or next following your attainment of age 63 | To the contract anniversary coinciding with or next following your attainment of age 65 |

| | |
|---|---|
| For disability commencing on or after the contract anniversary coinciding with or next following your attainment of age 63 but prior to the contract anniversary coinciding with or next following your attainment of age 70 | 24 months |

We will stop sending you payments and your claim will end on the earliest of the following:

1.   The end of the maximum period of payment.

2.   The date you are no longer disabled under the terms of the plan.

3.   The date you fail to submit proof of continuing disability satisfactory to Prudential.

4.   The date you refuse to be examined by doctors, other medical practitioners or vocational experts of our choice.

5.   The date you refuse to be interviewed by an authorized Prudential Representative.

6    The date your disability earnings exceed the amount allowable under the plan

7    The date you die.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one period of disability.

## What Disabilities Have a Limited Pay Period Under Your Plan?

If you are a Class 2 participant and have a disability which, as determined by Prudential, is due in whole or part to *mental illness*, there is a limited pay period during your lifetime.

The limited pay period for mental illness is 60 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 60 month period if you meet one or both of these conditions:

1.   If you are *confined* to a *hospital or institution* at the end of the 60 month period, Prudential will continue to send you payments during your *confinement*.

     If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

     If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.   In addition to item 1, if, after the 60 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

83500
CBI-LTD-10067

17

(16430-13)

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;

- trauma;

- viral infection;

- Alzheimer's disease; or

- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means a short-term, acute, general hospital that:

1.  mainly provides, by or under the 24 hour a day supervision of Doctors, inpatient diagnostic services and therapeutic services for the diagnosis, treatment and care of sick and injured persons;

2.  has organized departments of medicine and major surgery;

3.  has a requirement that every patient be under the care of a Doctor;

4.  provides 24 hour a day nursing service by or under the supervision of a registered professional graduate nurse (R.N.);

5.  if located in New York State, has in effect a hospitalization review plan applicable to all patients which meets at least the standards set forth in section 1861(k) of the United States Public Law 89-97, or as amended; and

6.  is duly licensed by the agency responsible for licensing such hospitals.

But Hospital is not, other than incidentally: (a) a place of rest; (b) a place primarily for the treatment of tuberculosis; (c) a place for the aged; (d) a place for drug addicts and alcoholics; or (e) a place for convalescent, custodial, educational or rehabilitory care.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused, wholly or partly, by:

-   intentionally self-inflicted injury or attempted suicide; or

-   *war* or any act of war.

*War* means declared or undeclared war and includes resistance to armed aggression.

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

-   you were continuously insured under this plan for the period between your prior claim and your current disability; and

-   your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

*Recurrent disability* means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help You Identify and Provide Portable Adaptive Equipment to Allow You to Work?

Portable adaptive equipment might be what is needed to allow you to perform the material and substantial duties of your own occupation with your employer. At your option, one of our designated professionals will assist you and your employer to identify portable adaptive equipment we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your employer and Prudential.

When this occurs, Prudential will reimburse you for the cost of the portable adaptive equipment up to the greater of:

o   $1000; or

o   the equivalent of two months of your gross disability payment

The portable adaptive equipment provided under this coverage is not the property of your Employer. It is your property.

This benefit is available to you once during your lifetime.

# Long Term Disability Coverage

## REHABILITATION SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a *rehabilitation program* available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program. If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved rehabilitation program.

*Rehabilitation program* means a program designed to assist you to return to work.

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins.

You must send Prudential written proof of your claim no later than 90 days after your elimination period ends.

If it is not possible to give notice and by these time limits, failure to meet these time limits will not make the claim invalid or reduce the claim if notice and proof are given as soon as reasonably possible.

The claim form is available from your Employer, or you can request a claim form from the Plan Administrator. If you do not receive the form from the Plan Administrator within 15 days of your request, send written proof of claim to the Plan Administrator without waiting for the form. If you do this, you will be deemed to have complied with the proof of claim requirements.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Plan Administrator.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

- That you are under the *regular care* of a *doctor.*

- Appropriate documentation of your monthly earnings.

- Appropriate documentation that you are not working at any job during the elimination period for your Long Term Disability claim.

- The date your disability began.

- Appropriate documentation of the disabling disorder.

- The extent of your disability, including restrictions and limitations preventing you from performing your own occupation.

- The name and address of any ***hospital or institution*** where you received treatment, including all attending doctors.
- The name and address of any doctor you have seen.

For your Long Term Disability claim, we may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information (e.g., copies of your IRS federal income tax return, W-2's and 1099's) as part of your proof of claim, or proof of continuing disability. This proof, provided at your expense, must be received within 30 days of a request by us. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Hospital or Institution*** means a short-term, acute, general hospital that:

1. mainly provides, by or under the 24 hour a day supervision of Doctors, inpatient diagnostic services and therapeutic services for the diagnosis, treatment and care of sick and injured persons;
2. has organized departments of medicine and major surgery;
3. has a requirement that every patient be under the care of a Doctor;
4. provides 24 hour a day nursing service by or under the supervision of a registered professional graduate nurse (R.N.);

5. if located in New York State, has in effect a hospitalization review plan applicable to all patients which meets at least the standards set forth in section 1861(k) of the United States Public Law 89-97, or as amended; and

6. is duly licensed by the agency responsible for licensing such hospitals.

But Hospital is not, other than incidentally: (a) a place of rest; (b) a place primarily for the treatment of tuberculosis; (c) a place for the aged; (d) a place for drug addicts and alcoholics; or (e) a place for convalescent, custodial, educational or rehabilitory care.

## Who Will Prudential Make Payments To?

Prudential will make payments to you for all benefits except survivor benefits payable upon your death.

Prudential will make payments to your eligible survivor for survivor benefits payable upon your death.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;
- any error Prudential makes in processing a claim; and
- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and the Contract Holder do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

# Glossary

*Active employment* means you are working for for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 17.5 hours per week

Your worksite must be:

● your usual place of business;

● an alternate work site other than your home unless clear specific expectations and duties are documented; or

● a location to which your job requires you to travel.

Normal vacation is considered active employment.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Contract holder* means the trust to whom the Group Contract is issued.

*Covered class* means your class as determined by the Contract Holder. This will be done under the Contract Holder's rules, on dates the Contract Holder sets. The Contract Holder must not discriminate among persons in like situations. You cannot belong to more than one class for insurance under Group Contract No. GZ-14273. "Class" means covered class, benefit class, anything related to work, such as position or earnings, or anything related to membership in the Participating Association, which affects the insurance available. If you are a member of more than one Participating Association included under the Group Contract, for the insurance you will be considered a member of only one of those associations. Your membership with all other Participating Associations will be treated as membership with that one.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

*Doctor* means a person who is performing tasks that are within the limits of his or her medical license; and

● is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

● has a doctoral degree in Psychology (Ph D or Psy. D.) whose primary practice is treating patients; or

● is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

83500
CGL-1015

(16430-13)

25

*Elimination period (LTD)* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential. If you become covered under a group long-term disability plan that replaces this plan during your elimination period, your elimination period under this plan will not be met.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.

*Hospital or institution* means a short-term, acute, general hospital that:

1. mainly provides, by or under the 24 hour a day supervision of Doctors, inpatient diagnostic services and therapeutic services for the diagnosis, treatment and care of sick and injured persons;

2. has organized departments of medicine and major surgery;

3. has a requirement that every patient be under the care of a Doctor;

4. provides 24 hour a day nursing service by or under the supervision of a registered professional graduate nurse (R.N.);

5. if located in New York State, has in effect a hospitalization review plan applicable to all patients which meets at least the standards set forth in section 1861(k) of the United States Public Law 89-97, or as amended; and

6. is duly licensed by the agency responsible for licensing such hospitals.

But Hospital is not, other than incidentally: (a) a place of rest; (b) a place primarily for the treatment of tuberculosis; (c) a place for the aged; (d) a place for drug addicts and alcoholics; or (e) a place for convalescent, custodial, educational or rehabilitory care.

*Injury* means a bodily injury that:

● is the direct result of an accident;

● is not related to any cause other than the accident; and

● results in immediate disability.

Disability must begin while you are covered under the plan.

*Insured* means any person covered under a coverage.

*Leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time or any period of disability is not considered a leave of absence.

*Material and substantial duties* means duties that:

● are normally required for the performance of your regular occupation; and

● cannot be reasonably omitted or modified.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one disability.

83500
CGL-1015

26

(16430-13)

*Mental illness* means a psychiatric or psychological condition regardless of cause.   Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions.  These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Monthly earnings* means your gross monthly income from your Employer as defined in the plan.

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

*Own occupation* means the occupation you are routinely performing when your disability occurs.

*Part-time basis (LTD)* means the ability to work and earn 20% or more of your indexed monthly earnings.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

*Plan* means a line of coverage under the Group Contract.

*Recurrent disability* means a disability which is:

○   caused by a worsening in your condition; and

○   due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

*Reduced hours* means you are working less than the number of hours required to be considered in active employment.

*Regular care* means:

○   one personally visits a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat one's disabling condition(s); and

○   one is receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for one's disabling condition(s) by a doctor whose specialty or experience is the most appropriate for one's disabling condition(s), according to generally accepted medical standards.

*Rehabilitation program* means a program designed to assist you to return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth.  Disability must begin while you are covered under the plan.

*We, us, and our* means The Prudential Insurance Company of America.

*You* means a person who is eligible for Prudential coverage.

83500
CGL-1015

(16430-13)

# Vermont Mandatory Civil Union Endorsement

## PURPOSE

Vermont law requires that health insurers offer coverage to parties to a civil union that is equivalent to coverage provided to married persons. This endorsement is part of and amends this policy, contract or certificate to comply with Vermont law.

## DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS

The definitions, terms, conditions and any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

Terms that mean or refer to a marital relationship, or that may be construed to mean or refer to a marital relationship, such as "marriage," "spouse," "husband," "wife," "dependent," "next of kin," "relative," "beneficiary," "survivor," "immediate family" and any other such terms include the relationship created by a civil union established according to Vermont law.

Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage," "divorce decree," "termination of marriage" and any other such terms include the inception or dissolution of a civil union established according to Vermont law.

Terms that mean or refer to family relationships arising from a marriage, such as "family," "immediate family," "dependent," "children," "next of kin," "relative," "beneficiary," "survivor" and any other such terms include family relationships created by a civil union established according to Vermont law.

"Dependent" means a spouse, a party to a civil union established according to Vermont law, and a child or children (natural, step-child, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union, established according to Vermont law.

"Child or covered child" means a child (natural, stepchild, legally adopted or a minor or disabled child who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union established according to Vermont law.

## CAUTION: FEDERAL LAW RIGHTS MAY OR MAY NOT BE AVAILABLE

Vermont law grants parties to a civil union the same benefits, protections and responsibilities that flow from marriage under state law. However, some or all of the benefits, protections and responsibilities related to health insurance that are available to married persons under federal law may not be available to parties to a civil union. For example, federal law, the Employee Income Retirement Security Act of 1974 known as "ERISA," controls the employer/employee relationship with regard to determining eligibility for enrollment in private employer health benefit plans. Because of ERISA, Act 91 does not state requirements pertaining to a private employer's enrollment of a party to a civil union in an ERISA employee welfare benefit plan. However, governmental employers (not federal government) are required to provide health benefits to the dependents of a party to a civil union if the

public employer provides health benefits to the dependents of married persons. Federal law also controls group health insurance continuation rights under "COBRA" for employers with 20 or more employees as well as the Internal Revenue Code treatment of health insurance premiums. As a result, parties to a civil union and their families may or may not have access to certain benefits under this policy, contract, certificate, rider or endorsement that derive from federal law. You are advised to seek expert advice to determine your rights under this contract.

83500
VTE 5001

29

(S-1)

The Claims and Appeals section

is not part of the

Group Insurance Certificate.



Claims and Appeals

(16430-13)

Page 1

# CLAIMS AND APPEALS

**Plan Benefits Provided by**

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey 07102

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits. For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees. Under no circumstances will the Employer/Policyholder be deemed the agent of The Prudential Insurance Company of America, absent a written authorization of such status executed between the Employer/Policyholder and The Prudential Insurance Company of America. Nothing in these documents shall, of themselves, be deemed to be such written execution.

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

**Claim Procedures**

1. **Determination of Benefits**

   Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

   If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

   (a)  the specific reason(s) for the denial,

   (b)  references to the specific plan provisions on which the benefit determination was based,

   (c)  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

   (d)  a description of Prudential's appeals procedures and applicable time limits, and

*Page 2*

(e)  if an adverse benefit determination is based·on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge·upon request.

2.  **Appeals of Adverse Determination**

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days.of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by Prudential, utilizing individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a)  the specific reason(s) for the adverse determination,

(b)  references to the specific plan provisions on which the determination was based,

(c)  a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d)  a description of Prudential's review procedures and applicable time limits,

(e)  a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f)  a statement describing any appeals procedures offered by the plan.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second, voluntary appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Prudential shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

(16430-13)

Page 9

# Prudential Financial

**Group Disability Insurance**
**Attending Physician's Statement**

The Employee is responsible for the completion of this form without expense to Prudential Financial.

**To Be Completed By Employee**

Employer/Association Name

Control Number

Employee First Name: R e b e c c a   MI: A   Social Security Number: 4 3 2 - 8 8 - 6 0 4 0

Employee Last Name: G i l d n

Suffix

Employee Address - Line 1: P O  B o x  1 1 2 9   Birth date (MM/DD/Year): 0 3 - 1 3 - 1 9 5 8

Employee Address - Line 2

Gender: ○ Male  ● Female

City: W a l d r o n   State: A R   Zip Code: 7 2 9 5 8 -

Occupation: B o o k k e e p e r  -  o w n e r

I hereby authorize release of information requested on this form by the below named physician for the purpose of claim processing.

X _Rebecca Gl_ Employee Signature

Date Signed: 1 2 / 0 2 / 2 0 1 3

**To Be Completed By Attending Physician**

Clinical Diagnosis
Primary: osteoarthritis, uE   ICD-9 Code: 7 1 5 . 1 4   Pregnancy EDC: / /
Secondary: lat. epicondylitis elbow   7 2 6 . 3 2
Secondary:

Relevant test procedures performed (Please provide results): _See notes_
EMG  9/5/13
X Rays  6/13/13   Bil elbow / hand / wrist

Surgical procedure(s) performed (Please be specific):   Date of Procedure: / /

Current Medications: Rx Tizanidine 2mg on 10/22/13

For Internal Use Only

Claim Number


1 0 3 B 0 1

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885


EXHIBIT
C

# Prudential Financial

**Group Disability Insurance**
**Attending Physician's Statement**

| Employee Last Name | Social Security Number |
|---|---|
| G l d w l | 432 - 88 - 6040 |

**Attending Physician Information (Cont'd)**

Was Claimant hospital confined? ○ Yes ● No

If Yes, please provide name and address of hospital:

If hospitalized, give dates:

From: ☐☐ / ☐☐ / ☐☐☐☐

To: ☐☐ / ☐☐ / ☐☐☐☐

**Other Treating Physicians or Consultants**

| Physician Name | Specialty | Phone Number |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Do you feel the claimant is competent to endorse checks and direct the use of proceeds? ● Yes ○ No

Nature of Medical Impairment / Limitation (Please specify nature of corresponding loss of function) *see note* *limited lifting repetitive movement twisting typing secondary to pain*

Date when significant loss of function occurred: 10 / 22 / 2013 ?

Are there Corresponding Medical Restrictions (i.e., What activities should the claimant not perform because of a significant risk to self or others?) *when severely painful avoid aggravating activities*

Prognosis for Return to Function / Return to Work: *as tolerated secondary to pain*

Return to Work Plan (Please describe): *possible occupational hand therapy, consider nerve test and/or injection*  Target Date: ☐☐ / ☐☐ / ☐☐☐☐

103B02

# Prudential Financial

**Group Disability Insurance**
**Attending Physician's Statement**

**Employee Last Name**
Glenn

**Social Security Number**
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

## #2.

**Attending Physician Information (Cont'd)**

**Describe Medical Obstacles to Return to Work**
pain

**Are there any Non-Medical Factors which have a significant impact on Functional Abilities (i.e., interpersonal, financial, amily)?**
N/A

**Work related illness or injury?** O Yes ⊗ No   **Was Condition caused by a MVA?** O Yes ⊗ No   **If MVA, in what state did it occur?**

**First Visit** 06/13/2015   **Last Visit** 10/22/2013   **Frequency of Visits**

**What Job Category best describes the claimant's functional abilities? (Please check appropriate box)**

⊗ Sedentary   O Light   O Medium   O Heavy   O Very Heavy   O Other

Negligible Weight Mostly Sitting | Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull | 10 to 25 lbs. freq. Up to 50 lbs. occ. | 25 to 50 lbs. freq. 50 to 100 lbs. occ. | More than 50 lbs. freq. 100 lbs. occasionally | (Please describe below)

## #3. Physician Information

**Physician Name**
Randall Stavincha

**Primary Phone Number**
713-442-1700

**Office Address**
15655 Cypress med Dr

**Fax Number**
713-442-1618

**City** Houston   **State** TX   **Zip Code** 77018-

**Specialty** orthopedres

## #4. Fraud Notice

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

X 

**Physician Signature**

12/29/2013

**Date Completed**

   

103803



# Prudential Financial



**Group Disability Insurance**
**Attending Physician's Statement**

The Employee is responsible for the completion of this form without expense to Prudential Financial.

**To Be Completed By Employee**

Employer/Association Name

Control Number

Employee First Name: R e b e c c A   MI: A
Social Security Number: 432 - 88 - 6 c 4 0

Employee Last Name: G I l d d N   Suffix

Employee Address - Line 1: P A b o x   1 2 9   Birth date (MM/DD/Year): 03 / 13 / 19 5 8

Employee Address - Line 2   Gender: ○ Male  ● Female

City: W A l d r o N   State: A R   Zip Code: 7 2 9 5 8 -

Occupation: b o o k k e e p e 1 - o w w e r

I hereby authorize release of information requested on this form by the below named physician for the purpose of claim processing.

X _Rebecca Se_   Date Signed: 12 / 02 / 2013
Employee Signature

**To Be Completed By Attending Physician**

Clinical Diagnosis

Primary: Osteoarthritis   ICD-9 Code: 7 1 5 . 0 9   Pregnancy EDC: / /

Secondary: _____

Secondary: _____

Relevant test procedures performed (Please provide results):
X-rays of hands / shoulders ☜ 9/16/09
→ unremarkable

Surgical procedure(s) performed (Please be specific):   Date of Procedure: / /
N/A

Current Medications: Conzip 100mg q1

For Internal Use Only

Claim Number

1 0 3 B 0 1

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885

# Prudential ⊕ Financial

**Group Disability Insurance**
**Attending Physician's Statement**

Employee Last Name

G l d n a | | | | | | | | | | | |

Social Security Number

4 3 2 - 8 8 - 6 0 4 0

**Attending Physician Information (Cont'd)**

Was Claimant hospital confined?  ○ Yes  ⊗ No
If Yes, please provide name and address of hospital.

_____ N/A _____

If hospitalized, give dates:
From: | | / | | / | | | |
To: | | / | | / | | | |

Other Treating Physicians or Consultants

| Physician Name | Specialty | Phone Number |
|---|---|---|
| N/A | | |
| | | |
| | | |

Do you feel the claimant is competent to endorse checks and direct the use of proceeds?  ⊗ Yes  ○ No

Nature of Medical Impairment / Limitation (Please specify nature of corresponding loss of function)

Osteo Arthritis   Causes   pain   in   joints

Date when significant loss of function occurred: | | / | | / | | | |

Are there Corresponding Medical Restrictions (i.e., What activities should the claimant not perform because of a significant risk to self or others?)

Any   movement   that   cause   pain

Prognosis for Return to Function / Return to Work:

Undetermined

Return to Work Plan (Please describe):   Target Date: | | / | | / | | |

As   patient   feel   should   dbta

```
*103B02*
```

# Prudential Financial

**Group Disability Insurance**
**Attending Physician's Statement**

**Employee Last Name:** Glewa

**Social Security Number:** 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

**Attending Physician Information (Cont'd)**

Describe Medical Obstacles to Return to Work: Pain in Joint

Are there any Non-Medical Factors which have a significant impact on Functional Abilities (i.e. interpersonal, financial, family)?  N/A

Work related illness or injury?  ○ Yes  ⊗ No

Was Condition caused by a MVA?  ○ Yes  ⊗ No

If MVA, in what state did it occur? [ ]

**First Visit:** 02/16/2009

**Last Visit:** 10/23/2013

Frequency of Visits: _____

What Job Category best describes the claimant's functional abilities? (Please check appropriate box)

○ Sedentary
Negligible Weight Mostly Sitting

⊗ Light
Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull

○ Medium
10 to 25 lbs. freq. Up to 50 lbs. occ.

○ Heavy
25 to 50 lbs. freq. 50 to 100 lbs. occ.

○ Very Heavy
More than 50 lbs. freq. 100 lbs. occasionally

○ Other
(Please describe below)

**Physician Information**

**Physician Name:** RANDALL JOHNSON

**Primary Phone Number:** 281-297-6476

**Office Address:** 9201 PINECROFT

**Fax Number:** 281-297-6928

**City:** THE WOODLAND  **State:** TX  **Zip Code:** 77380

**Specialty:** RHEUMATOLOGY

**Fraud Notice**

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

X _____
Physician Signature

**Date Completed:** 01/06/2014

|||||||
1 0 3 B 0 3

 **Prudential**

Jennifer Martinovich
Disability Consultant

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 87161
Fax: (866) 285-8569
Website: www.prudential.com/mybenefits
Web Access Code: 16430

March 11, 2014

Rebecca A Glenn
P.O. box 129
Waldron, AR  72958

Claimant: Rebecca A Glenn
Claim No.: 11935522
Control No./Br.: 16430 / 00002

Dear Ms. Glenn:

We have completed our review of your claim for Long Term Disability (LTD) benefits under Group Policy No. 16430 issued to AICPA Insurance Trust. After careful review, we have denied your claim and no benefits are payable. This letter outlines our reasons for this determination.

### Group Policy Requirements

How Does Prudential Define Disability?

You are disabled when Prudential determines that, due to your *sickness* or *injury*:

• you are unable to perform the *material and substantial duties* of your *own occupation*;

• you are under the *regular care* of a *doctor*; and

• you are not working at any job for wage or profit.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

• your doctors; and

• doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

• are normally required for the performance of your own occupation; and


EXHIBIT
D

• cannot be reasonably omitted or modified.

*Own occupation* means the occupation you are routinely performing when your disability occurs.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

## Claim Information

Your claim states that you discontinued working as a Bookkeeper/ CPA on June 1, 2013 due to osteoarthrosis and lateral epicondylitis. You report that your occupation required that you work on the computer all day. You also note that you would drive to your client's offices. You report that you can't write or use a computer for hours on end, that you can't walk up and down stairs, and that you can't sit for long periods of time.

The Attending Physician's Statement completed by Randal Stavinoha, MD (Orthopedic) indicates that the sedentary job category best describes your functional abilities. The Attending Physician's Statement completed by Randall Johnson, MD (Rheumatologist) indicates that the light job category best describes your functional abilities.

## Summary of Medical Information Reviewed

We have reviewed the medical records in file from Dr. Stavinoha and Dr. Johnson

Notes from your June 13, 2013 office visit with Dr. Stavinoha indicate that you reported complaints of bilateral elbow, hand, and wrist pain and multiple diffuse arthralgia. You reported that you had seen rheumatology 4 years prior. Your physical exam revealed a normal gait, positive tenderness of lateral epicondyle, and pain on resisted wrist extension and finger extension and supination. Tendons and ligaments were noted to be intact and stable, and full range of motion was indicated. There was no other tenderness or swelling. Distal neurovascular was noted to be grossly intact. Your elbow x rays indicated osteoarthrosis. Medications were noted as hydrochloriothiazide, Inderal, and Lipitor.

Notes from your next office visit of October 22, 2013 indicate continued complaints of bilateral elbow, hand, and wrist pain, and multiple arthralgia. Your physical exam was the same as your prior exam of June 13, 2013.

Notes from your October 23, 2013 office visit with Dr. Johnson indicate osteoarthritis of the hand, medial epicondylitis, and knee, and degenerative disc and back pain symptoms with no signs of pathologic or inflammatory process. Medications added that date were ConZip/ Tramadol. Your physical exam indicated normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. Your examination of the right and left elbow, and right and left hand is documented as no joint deformity, heat, swelling, erythema, or effusion. Full range of motion is noted. The remainder of your examination was unremarkable.

## Summary

A clinical review of the medical documentation in your file indicates that you have a surgical history that includes both knee and elbow arthroscopy in 2004. Your office visit note of June 13, 2013 is noted to document osteoarthrosis in your hands and lower leg, and epicondylitis of your elbow. Carpal tunnel syndrome is also noted. You were next seen by Dr. Stavinoha on October 22, 2013 and then by Dr. Johnson on October 23, 2013. The clinical review indicates you're your diagnostic studies including labs and nerve conduction study/ electromyogram studies are noted to be described as normal by your medical providers. In October 2013 a new prescription for

ConZip/ Tramadol is noted. The Attending Physician Statement completed by Dr. Johnson is noted to indicate a light capacity, and pain is noted as a limiting factor. The clinical review indicates that your pain symptoms are consistent with your diagnosis of osteoarthritis. The clinical review indicates, however, that your level of treatment does not rise to a level that would indicate significant functional impairment. The clinical review indicates that considering Dr. Johnson's opinion noted on the January 6, 2014 Attending Physician's Statement, and in review of the available records, reasonable limitations include lifting and carrying up to 10 pounds frequently and 20 pounds occasionally. Frequent walk/ stand, and constant push/ pull are noted as reasonable limitations, as well as occasional stairs, no ladders or balance activities.

You report an inability to write or use a computer for hours on end, an inability to walk up and down stairs; and that you can't sit for long periods of time. The clinical review indicates that while the medical documentation in file does conclude a diagnosis of osteoarthritis, your exam findings and treatment are not consistent with a level of discomfort that would rise to the level of significant functional impairment from activities that may include reaching at desk level, right and left handling and fingering, reaching overhead, sitting, and lifting up to 10 lbs frequently and 20 pounds occasionally. Therefore, in the absence of limitations or restrictions that would prevent you from performing the duties of your occupation, we have determined that you are not eligible for LTD benefits under the terms of the Group Policy.

<u>Appeal Rights</u>

You have a right to appeal this decision. If you choose to do so, your appeal must be made in writing by you or your authorized representative, and submitted within 180 days of the date of receipt of this letter. Your appeal should contain:

- Your name, control number, and Social Security number (or claim number)
- The reasons that you disagree with our determination
- Medical evidence or information to support your position such as:
  - Copies of therapy treatment notes
  - Any additional treatment records from physicians
  - Actual test results (e.g. EMG, MRI)

You may submit with your appeal any other written comments, documents, records, or information related to your claim.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim.

Your written claim appeal should be submitted to Appeals Review Unit at the address listed above.

A determination on your appeal will be made within 45 days of the receipt of your appeal request. This period may be extended by 45 days, if special circumstances require an extension. You will receive written notice of the extension, the reason for the extension, and the date by which the Appeals Review Unit expects to render a decision, within the initial 45-day period. However, if the Appeals Review Unit requests additional information, the extension may be delayed until you provide the requested information.

If our decision to deny benefits is upheld at the first level of appeal, you or your authorized representative may file a voluntary second appeal. You are entitled to receive upon request and at no cost, sufficient information to make a decision about filing this appeal. The same time frame for the first appeal will apply to the second appeal.

If you have questions about our decision on your claim, you may call the number listed above.  If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,

**Jennifer Martinovich**
Jennifer Martinovich
Disability Consultant

 **Prudential**

Kevin L. Carder
Sr. Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84585
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 16430

October 24, 2014

Rebecca A Glenn
PO Box 129
Waldron, AR  72958

Claimant: Rebecca A Glenn
Claim No.: 11935522
Control No./Br.: 16430 / 00002

Dear Ms. Glenn:

We have completed our review of your first request for reconsideration of our decision to disallow your claim for Long Term Disability (LTD) benefits under the Group Policy No. 16430 issued to AICPA Insurance Trust. We have determined our decision was appropriate and have upheld our decision to disallow your claim for LTD benefits. This letter outlines the reasons for this determination.

Your claim states you discontinued working as a Bookkeeper on June 1, 2013 due to osteoarthritis (OA), epicondylitis, and torn meniscus in both knees. You reported you could not write or use the computer on a prolonged basis, could not walk up and down stairs, and could not sit for long periods of time. Your claim for LTD benefits has been denied because we determined the medical information received did not support impairment which would prevent you from performing material and substantial duties of your own occupation.  A complete explanation of that decision can be found in our letter dated March 11, 2014.

### Group Disability Requirements

**"How Does Prudential Define Disability?"**

You are disabled when Prudential determines that, due to your *sickness* or *injury*:

- you are unable to perform, for wage or profit, the *material and substantial duties* of your *own occupation*;

- you are under the *regular care* of a *doctor*; and

- you are not working at any job for wage or profit.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and


EXHIBIT
E

- doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your own occupation; and

- cannot be reasonably omitted or modified.

*Own occupation* means the occupation you are routinely performing when your disability occurs."

We have received your first request to appeal our decision to deny your claim for LTD benefits.

**Appeal Statement**

In your appeal, you indicate the decision was made by a person who never examined or even spoke to you.

You note the January 3, 2012 magnetic resonance imaging (MRI) showed suspected small free edge tears in the posterior horn of the medial meniscus near the posterior root and in the anterior horn of the lateral meniscus near the junction of the body and posterior horn; areas of chrondromalacia in the patellofemoral joint and posterior medical femoral condyle; and joint effusion. You report three surgeries on the left knee with no resolution of the issues. The February 11, 2013 MRI showed a two millimeter left posterolateral disc bulge with mild left foraminal stenosis, lumbar (L)3-4 mild right facet arthropathy, L4-5 mild disc degeneration, mild central canal stenosis, moderate bilateral facet arthropathy and mild foraminal stenosis. You note clinical evaluations have diagnosed spinal stenosis, thoracic or lumbar disc disease and degenerative disc disease (DDD), early OA of the distal interphalangeal joints (DIP) joint of the hands and small chronic ossicle of the left lateral humeral epicondyle. You note prescriptions for braces for both hands and tennis elbow braces for both elbows. You report diagnoses of B lateral epicondylitis, multiple diffuse arthralgias, questionable synovitis, myalgias, diffuse OA, possible inflammatory arthritis, possible carpal tunnel syndrome (CTS) and possible myofascial pain syndrome. You have also been diagnosed with gout and elevated erythrocyte sedimentation rate (ESR). You report moderate cartilage space narrowing of both knees. You report your physicians have recommended surgery for your hands and knees but the risks outweigh any potential benefits.

On June 26, 2014 Dr. Bramm noted low Vitamin D and high immunoglobin A levels. You are taking medication/vitamins for both. You report the medications including Cymbalta are making you ill and not helping.

You report your pain level averages seven of ten on most days and pain medication makes you nauseous. The pain and stiffness interferes with daily activities such as hygiene, making food and housekeeping with reports of taking longer than three times as long as normal to perform tasks. You report an inability to sit at a computer for hours typing or doing bookkeeping work and the knees keep you from standing for long periods of time. You experience sharp shooting pains in your hand which causes you to drop your pen or stop typing. You cannot reach and pull at desk level more than a few minutes and it takes longer to do tasks such as typing a letter.

You report you are unable to lift 10 pounds frequently or 20 pounds occasionally. You cannot walk on uneven ground and can only climb stairs by putting one leg on a step and bringing the other leg to the same step and can potentially cause you to fall. You require frequent rest periods and cannot commit to a work schedule because you never know if your pain will allow you to function.

You also note Prudential's statement you are not treating with doctors sufficiently is incorrect as you have kept every appointment scheduled or recommended and followed your doctors' order with the exception of invasive procedures as the risks are far greater than the benefits at this time. You have had issues with anesthesia and will only use if a life and death issue.

<u>Clinical Review</u>

We have thoroughly evaluated the medical information on file, as well as the documentation received with your appeal. We reviewed your file with an independent physician board certified in Physical Medicine and Rehabilitation, hereafter referred to as "Physician Reviewer". Although all medical data in your file was reviewed, not all the information will be specifically referenced in the body of this letter. A summary of the medical records has been provided below.

From October 2011 through December 2011 Dr. Lipscomb reported your complaints of bilateral knee pain after falling on October 11, 2011. You were treated with a home exercise program (HEP) and over-the-counter (OTC) medications. On December 20, 2011 Dr. Lipscomb's impression following his evaluation was a meniscal tear.

The January 3, 2012 MRI of the right knee revealed suspect small posterior horn tear of the medial meniscus and chondromalacia in patellofemoral joint.

On May 17, 2012 Dr. Lipscomb documented your complaints of bilateral knee, elbow, and wrist, left shoulder, and low back pain. You indicated two falls, on March 8, 2011, and October 16, 2011, injuring these areas. The December 2011 MRI indicated a medial meniscus tear on the left with PT and x-rays requested.

The February 18, 2013 lumbar spine MRI lumbar spine indicated no significant abnormalities noted.

The June 13, 2013 wrist and hand x-rays revealed early osteoarthritis of the interphalangeal joint (IP). The June 13, 2013 elbow x-ray elbow noted no significant abnormalities. The June 13, 2013 laboratory testing documented no significant abnormalities.

On June 13, 2013 Dr. Randall Stavinoha reported your symptoms of myalgias, elbow and wrist pain, noting a six year history of pain. The physical examination documented normal range but discomfort to palpation at the elbow. The treatment plan was conservative management and referral to a rheumatologist. Subsequently, on July 22, 2013 Dr. Stavinoha again reported pain complaints with negative x-ray assessment and electro diagnostic studies. Dr. Stavinoha recommended conservative management only using medication was prescribed.

On September 5, 2013 orthopedist Dr. William Hayes noted your low back pain radiating to the buttocks. The physical examination documented normal strength, reflexes, and sensation. The x-rays demonstrated spondylosis with a MRI to be performed.

The September 25, 2013 electro diagnostic testing revealed a normal study with no evidence of mononeuropathy, radiculopathy, or myopathy.

October 23, 2013 Dr. Johnson noted your complaint of gradual onset of pain in all areas including knee, elbow, and back pain. The examination noted normal range, no significant tenderness, and

no significant joint deformities. The neurological examination was normal with symmetric reflexes documented. You appeared to have OA of the hands with home therapy suggested for the epicondylitis. Medications suggested for the knee and back pain.

On December 5, 2013 Dr. Thomas Cheyne noted your multiple areas of discomfort. You reported an inability to work because of your hand and wrist pain with numbness. You indicated you awakened with numb hands. Dr. Cheyne noted the nerve conduction studies (NCS) were negative. The examination reported a negative Tinel but positive Phalan test. Dr. Cheyne opined you had minimal tenderness at the elbows with full range of motion (FROM). The December 5, 2013 bilateral elbow x-rays indicated normal studies. Dr. Cheyne also indicated the NCS was to be repeated.

January 31, 2014 hand surgeon Dr. James Kelly reported your symptoms of numbness in both hands. You stated it had been progressively worsening with involvement of all your fingers with the left hand worse. You had a positive Tinel and Phalen sign. It was recommended your electro diagnostic studies should be repeated. Dr. Kelly opined you appeared to have CTS.

On February 11, 2014 Dr. Lipscomb noted your complaints of bilateral knee pain. You reported a left anterior cruciate ligament (ACL) reconstruction and medial meniscal tear in the past. A steroid injection was done into the right knee.

The February 25, 2014 repeat electro diagnostic testing revealed mild slowing of the right median nerve across the wrist with no other significant abnormalities.

The March 17, 2014 reported mildly elevated sedimentation (SED) and uric acid rates.

At the March 27, 2014 office visit, Dr. Cheyne noted the February 8, 2013, MRI demonstrated a disc bulge at L2-3 with mild foraminal stenosis at L3-4. Your ambulation was normal, though there was tenderness across your low back. You were able to heel and toe walk. Dr. Cheyne reported normal sensory and motor function with equal reflexes. Your straight leg raise (SLR) was mildly positive. Dr. Cheyne recommended an epidural steroid injection (ESI).

On April 15, 2014, Dr. Cheyne indicated you had three months of pain in your right knee. You had a history of left knee pain with an ACL tear and surgery. You reported difficulty with weight bearing, walking, and climbing stairs with the prescribed medication not helpful. Your ACL surgery occurred in 2004. You felt your knees wanted to buckle suddenly. The x-rays demonstrated lateral compartment narrowing and hypertrophic osteoarthritic changes. Dr Cheyne opined you had bilateral moderate OA of the knees. The examination noted no instability but some crepitus. It was noted you would consider injections. Dr. Cheyne also recommended weight loss.

On May 29, 2014 Dr. Evans noted your complaints of bilateral hand and wrist pain and numbness. The physical examination reported normal cervical range and negative Spurling. You had normal upper extremity strength and a negative Tinel sign, though your Phalen sign was positive, bilaterally. Your range of motion (ROM) was normal. Your sensation was decreased in the median nerve distribution, bilaterally. The x-rays demonstrated very mild degenerative changes in the thumb carpometacarpal (CMC) joint. Dr. Evan's impression was bilateral CTS. Dr. Evan noted you were to be scheduled for initial left procedure and then a right procedure if you elected to proceed with surgery

On June 26, 2014 Dr. Bramum documented your two-year history of joint pain, possible median or ulnar neuropathies, and fatigue. Dr. Bramum noted a prior rheumatology workup was negative. You also reported a history of sleep apnea, multiple arthroscopic procedures on the left knee and left elbow. There is also a history of an ankle fracture and deep vein thrombosis (DVT). The physical examination noted good range of motion (ROM) at all joints with no significant

tenderness.   There was minimal tenderness at the medial epicondyle. The neurologic examination was normal with x-rays indicating OA of the knees. Dr. Branum diagnosed myofascial pain and suggested a trial of the medication Lyrica. You were encouraged to remain active in exercise with physical therapy (PT) as an option.   The June 26, 2014 lumbar x-ray indicated minimal degenerative changes of the sacroiliac (SI) joints and degenerative changes of the facet joints at L4-5. The June 26, 2014, and July 23, 2014 laboratory results indicated no significant abnormalities noted.

After review of the documentation, the Physician Reviewer opines medically necessary restrictions and/or limitations are required of no prolonged standing or walking, no frequent lifting over 25 pounds, and no lifting over 50 pounds. You also would be restricted from frequent squatting and kneeling.   You do not have any significant findings in any other area that would warrant any restrictions or limitations. You have minimal findings on the x-rays of your back with no clinical finding. You do not have any significant findings on diagnostic studies in regards to the elbows, with no significant clinical findings. You do not have significant findings involving your wrists other than some mild CMC degenerative changes of the thumb which would not require restrictions. The Physician Reviewer further opines you do not have significant findings of CTS and no management for carpal tunnel syndrome with splinting or any other attempt at management of this problem. You have not been sent for PT for any of your problems.   The restrictions and/or limitations noted above are only in regard to your knees. While your reports of stiffness and pain are noted, your rheumatologic studies have been negative as have lab studies with the exception of a mild elevated SED rate. There are no other indicators of any inflammatory process. The medical records do provide evidence of significant findings which would prevent using your hands for handling or fingering or sitting for prolonged periods.   Regarding Dr. Stavinoha's restrictions and/or limitations, the Physician Reviewer opines these are based on your pain complaints and not based on the clinical evidence including examination findings or diagnostic testing results. Further, Dr. Johnson's restrictions and/or limitations are not found to be supported by the medical evidence. Dr. Johnson's restrictions and/or limitations are based on your pain complaints and not based on the clinical evidence including examination findings or diagnostic testing results. Further, there are no reports of adverse side effects from medication to support the need for any restrictions and/or limitations.

Regarding treatment of your conditions, the Physician Reviewer notes your visits to numerous doctors, but opines you have not consistently followed through with any one physician.    The Physician Reviewer noted the numerous treatment recommendations to you with trial of medications but stopping them later.   You have been recommended to continue a HEP, elbow splint, but you have not followed through on these. There has been recommended PT; however, there is no indication you have followed through with this treatment, which would be normal conservative management for these types of complaints including the knees    The Physician Reviewer opines your treatment has been quite limited.

## Analysis

You take issue with the decision to disallow your benefits being made by someone who did not speak or examine you. The policy does not require we have you examined in determining your disability as defined by the plan.   When we have sufficient medical information, it is appropriate to have a clinical review to understand your condition(s) and any restrictions and/or limitations. You report you continue to experience pain and you are unable to work due your pain, inability to walk, to use your hands, inability to reach or lift more than 10 pounds frequently, inability to sit for prolonged periods, and need for frequent rests.   The medical evidence as outlined above provides various pain complaints and the restrictions and limitations you self report or are provided by your physician are beyond what would be reasonable given the physical exam findings and diagnostic test results.

You indicate you owned your own bookkeeping business. In your occupation you performed services including entering accounts receivable, issuing checks, and paying bills. You also reconciled bank and credit card statements, entered deposits, typed letters and sometimes filed but tried not to do filing so your clients could find the documentation they needed. You reported one to two clients per month (not every month) may have requested filing. EE helped clients pack up office or put information into storage approximately two to three times per year. You previously provided data entry services but discontinued this work two years prior to your last day worked and just concentrated on bookkeeping duties. You also noted for the last two years you felt unable to and did not perform any lifting of significance.

You report your occupation required commuting to your clients' workplace which included homes and offices from a few minutes to locations 60 miles away. You indicated your occupation usually required only lifting five to eight pounds, required sitting 80% of the time and standing and/or walking 20% of the time.

Based on our review the medical evidence does not support restrictions and/or limitations which would prevent you from performing the material and substantial duties of your own occupation from June 1, 2013 forward. Therefore, we have upheld our decision to deny your claim for LTD benefits.

### Appeal Rights

You may again appeal this decision to Prudential's Appeals Review Unit for a final decision. If you elect to do so, the appeal must be made in writing by you or your authorized representative. Your complete appeal must be submitted within 180 days of the receipt of this letter. The appeal may identify the issues and provide other comments or additional evidence you wish considered. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. Please forward your appeal request to me at the above address.

A determination on your claim appeal will be made within 45 days of the receipt of your appeal. This period may be extended by 45 days if special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However if Prudential requests additional information from you and you fail to respond, this period of time may be extended until you provide the requested information.

If you have questions about our decision on your claim, you may call the number listed above. If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,

*Kevin L Carder*

· Kevin L Carder
Sr. Appeals Analyst

 **Prudential**

Kevin L Carder
Sr. Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84585
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 16430

August 3, 2015

G.E. Bryant III, Esq.
Medlock, Gramlich & Sexton LLP.
105 N 14th Street, PO Box 2646
Fort Smith, AR 72902

Claimant: Rebecca A Glenn
Claim No.: 11935522
Control No./Br.: 16430 / 00002

Dear Attorney Bryant:

Thank you for the opportunity to speak on the telephone on July 30, 2015 concerning the appeal review of your claim for Long Term Disability (LTD) benefits under Group LTD Policy No. 16430 issued to AICPA Insurance Trust.

This letter is to confirm following our conversation and receipt of your August 2, 2015 letter you agreed to Prudential Financial extending the appeal review period beyond 90 days.

During our conversation I explained that Prudential Financial was not able to complete the appeal review of the information in your file by August 2, 2015 the 90th day of the appeal review period, and so I requested your permission to continue the review currently under way and to extend the review period beyond 90 days. You indicated that you understood the need to continue the review at this time and agreed to such an extension.

As we also discussed, in order to complete the current appeal review, Prudential Financial will need to obtain the confirming letter from Dr. Branum with any comments/signature. We will communicate our determination on appeal to you as soon as our review is completed but in no event later than August 16, 2015.

Please note that Prudential is of the reasonable position that it need not provide a claimant or their representative with copies of documents gathered during the course of an appeal prior to the final decision so long as the Company and provides the claimant or representative appropriate information and documentation at the appropriate stages in the administrative process, i.e., prior to or at the outset of an appeal and after the final decision on appeal. A review of the administrative record will indicate we maintain consistent claims practices in accordance with ERISA regulations.

You may check the status of the claim by visiting our website www.prudential.com/mybenefits. If you are a first time user, you will need your access code to register. Your access code is 16430.



EXHIBIT
F



Kevin L. Carder
Sr. Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84585
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 16430

August 10, 2015

G.E. Bryant III, Esq.
Medlock, Gramlich & Sexton LLP
105 N 14th Street, PO Box 2646
Fort Smith, AR 72902

Claimant: Rebecca A Glenn
Claim No.: 11935522
Control No./Br.: 16430 / 00002

Dear Attorney Bryant:

We have completed our review of your appeal on behalf of Rebecca Glen's for second reconsideration of our decision to disallow Ms. Glen's claim for Long Term Disability (LTD) benefits under the Group Policy No. GZ-14273 issued to AICPA Insurance Trust. We have determined that our decision was appropriate and have upheld our decision to disallow Ms. Glenn's claim for LTD benefits. This letter outlines the reasons for this determination.

Ms. Glenn's claim states she discontinued working as a Bookkeeper on June 1, 2013 due to osteoarthritis (OA), epicondylitis, and torn meniscus in both knees. Ms. Glenn reported she could not write or use the computer on a prolonged basis, could not walk up and down stairs, and could not sit for long periods of time. Ms. Glenn's claim for LTD benefits has been denied because we determined the medical information received did not support impairment which would prevent her from performing material and substantial duties of her own occupation. This decision was upheld on first reconsideration. A complete explanation of these decisions can be found in our letter dated March 11, 2014 and October 24, 2014.

Ms. Glenn's LTD policy states:

"How Does Prudential Define Disability?

You are disabled when Prudential determines that, due to your *sickness* or *injury*:

- you are unable to perform, for wage or profit, the *material and substantial duties* of your *own occupation*;

- you are under the *regular care* of a *doctor*, and

- you are not working at any job for wage or profit.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:



EXHIBIT

G

   o   your doctors; and

   •   doctors, other medical practitioners or vocational experts of our choice.

When we may require you to be examined by doctors, other medical practitioners or vocational experts of our choice, Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

   •   are normally required for the performance of your own occupation; and

   •   cannot be reasonably omitted or modified.

*Own occupation* means the occupation you are routinely performing when your disability occurs."

On initial review, a clinical review was completed of all available medical records. You were noted to have a history of OA, epicondylitis, and torn meniscus in both knees. You reported you could not write or use a computer for hours on end, could not walk up and down stairs, and could not sit for prolonged periods. The medical documentation listed a past surgical history to include knee arthroscopy/surgery in 2004, revision of nose in 2004, and elbow arthroscopy/surgery in 2004. Your medical history included deep vein thrombosis (DVT) of the leg, hypertension (HTN), obesity, hypercholesteremia and migraines. Your primary disabling diagnosis was OA and your treating providers noted by Attending Physician's Statements (APS) dated December 24, 2013 and January 6, 2014 you had at least at a sedentary level capacity. Your rheumatologist indicated a light work capacity which includes lift/carry up to 10 pound frequently and 20 pounds occasionally, ability to stand/walk on a frequent basis and ability to constantly push/pull. The APS forms also explained pain was a limiting factor. It was noted your pain symptoms were consistent with your diagnosis of OA, and was self-limiting. The clinical review noted the level of treatment (office visit in June 2013 and not again until October 2013 with no significant pain medications) did not rise to the level which would indicate significant functional impairment. It was determined based on the medical evidence Ms. Glenn did not have an increase in symptoms she stopped working to support the need for medically necessary restrictions and/or limitations and her LTD benefits were disallowed. This decision was communicated in our letter dated March 11, 2014.

As part of the first appellate review of Ms. Glenn's claim, the available medical data in her administrative record was referred to an external physician (hereinafter referred to as "Physician Reviewer") for the purpose of performing a medical review. The physician who reviewed the available medical data is Board Certified in Physical Medicine and Rehabilitation. It was determined, based on the medical evidence, Ms. Glenn had medically supported restrictions due to her OA. It was further determined within those medically supported restrictions and/or limitations, she would have the functional capacity to perform the duties of her own occupation and the decision to disallow her LTD benefits was upheld. A complete explanation of that decision can be found in our letter dated October 24, 2014.

We have received your request on behalf of Ms. Glenn for second reconsideration of our decision to deny Ms. Glenn's claim for LTD benefits. In your appeal, you indicate:

Ms. Glenn indicates there are several incorrect statements in the appeal uphold letter, which may have been material to our decision:

1. Ms. Glenn notes she is not taking Vitamin D for deficiency and high immunoglobin A levels but only Vitamin D deficiency.

2. We failed to note Dr. Lipscomb recommended surgery for the meniscal tear of the right knee. Further, Dr. Stavinoha did not recommend conservative treatment with only medication; but also wearing braces for the epicondylitis on each elbow and splints for CTS on both hands. She continues to wear them at night.

3. Ms. Glenn noted she was not examined by Dr. William Hayes though we noted she was examined on September 5, 2013. This date was changed after finding errors in Hayes' records. The errors were discovered after receiving records from Dr Baig at Sterling Ridge Orthopedic and Sports.

4. Ms. Glenn notes our reviewer found no significant findings of CTS and no management for CTS with splinting or other management. She repots CTS and arthritis has been diagnosed by multiple physicians and splints are being used as directly. The braces on the elbows were stopped at Dr. Stavinoha's instruction as they offered no relief. Since the last appeal, she has had a biopsy which shows psoriasis to support psoriatic arthritis. Also, a total body nuclear medicine body scan was performed to support a diagnosis of arthritis.

5. Ms. Glenn disagrees with the contention she has not consistently followed through with one physician. She was required to go to different providers and any treatment discontinued was at the doctor's instructions.

6. Ms. Glenn indicated we incorrectly stated that data entry services were discontinued 2 years prior to the last day work. Ms. Glenn indicated she has always provided data entry work as well as bank reconciliation, credit card reconciliations, payroll reports, sales tax return, entered deposits, checks and accounts payable/receivable and 1099s and W-2 for her clients. The last year prior to disability she no longer provided the services of helping client's pack up year end file or their offices due to her inability to lift heavy boxes and the bending and stooping involved.

You also note the medical records provided documented Ms. Glenn has psoriatic arthritis with ongoing treatment including heat therapy, ROM exercise and a Medrol Dosepak did not provide any improvement. You report Ms. Glenn continues to return for appointments as directed by her providers and follows the treatment recommendations offered. You indicated the October 24, 2014 letter indicated "the medical records do provide evidence of significant findings which would prevent your hand from handling and fingering or sitting for prolonged periods of time." You indicated as a Bookkeeper Ms. Glenn's job required the constant use of her hand and sitting for approximately 80% of the time. You indicated Prudential agreed her disabilities would prevent her from performing activities material to her own occupation. You disagree there are insufficient clinical findings.

We received and reviewed the new information, which included medical records from Dr. Amy Hudson, Johnson Dermatology, Sparks Health System, Washington Regional Internal Medicine Associates, Dr. Russell Branum as well as a letter from Ms. Glenn and appeal letter. As part of the appellate review of Ms. Glenn's claim, the available medical data in her administrative record to include those records received on second reconsideration were referred back to the Physician Reviewer for the purpose of performing a medical review. Although all available medical data was reviewed, not all medical data will be referenced in the content of this letter.

Ms. Glen's letter of appeal pointed out in regards to the prior review, her high immunoglobulin A level can be cause for chronic pain. Ms. Glenn noted Dr. Randal Stavinoha, recommended wearing braces for epicondylitis and CTS. Mr. Glenn reported she was not examined by Dr. William Hayes on September 5, 2013, but this was changed when her chart was made after she found errors in her records. Ms. Glenn noted she uses carpel tunnel splints on a nightly basis with

discontinuance of the elbow braces since they were not helping. Ms. Glen noted since the prior review, a biopsy was performed demonstrating she has psoriasis and possibly psoriatic arthritis and also had an isotope uptake study indicating a diagnosis of arthritis. Ms. Glenn stated she needed to see a different orthopedic surgeon for a different problem. Ms. Glenn reported corrections in regards to the work she performed. Ms. Glenn then describes the information being submitted and the bone scan report which indicated she had osteoarthritic changes and a biopsy with skin lesion indicating a diagnosis of psoriasis. Ms. Glen also noted Dr. Russell Branum, felt she had OA and atypical fibromyalgia and had seen Dr. Schwartz who agreed with Dr. Branum's diagnosis. Regarding the psoriatic arthritis, she was given a Medrol Dosepak without improvement.

On October 28, 2014 Dr. Branum indicated you had diffuse joint pain and hand stiffness and recommended a body scan and usage of vitamin D.

The November 18, 2014 pathology report of specimens of the left shoulder specimen was consistent with solar lentigo and the right test specimen was consistent with hydrocystoma. The scalp lesion required further evaluation. The November 24, 2014 pathology final indicated it was consistent with psoriatic-formed dermatitis and stated the clinical impression of psoriasis is a possibility. The November 26, 2014 pathology report also was consistent with the above information of psoriatic psoriasis.

The November 20, 2014 nuclear medicine and total body scan revealed an increased uptake of the level of the shoulder joints, knee joints, ankle joints, as well as carpal joints, bilaterally. Also, the interphalangeal (IP) joint of the left thumb was consistent with osteoarthritic changes.

On January 13, 2015 Dr. Branum recommended the medication Methotrexate which Ms. Glenn deferred with an additional recommendation of a trial of Glucosamine.

On February 10, 2015 Dr. Jessica Short evaluated Ms. Glenn for her complaint of arthralgias. Dr. Short noted Ms. Glenn has chronic bilateral knee pain with prior surgery and chronic ankle pain after an injury to her left elbow. Ms. Glenn reported a two-hours-a-morning stiffness and diffuse swelling to her fingers as well as a scalp rash for over three years. Dr. Short reported Ms. Glenn was diagnosed with CTS for which she has been using splints, but still results in numbness which awakens her at night. Dr. Short reported the conduction studies in February were normal. The physical examination noted normal ambulation; no joint instability; normal movement of all extremities and normal strength. Dr. Short noted Ms. Glenn's reports of tenderness in all of her fingers and shoulders. Ms. Glenn's reflexes were symmetric. Dr. Short opined diagnoses of arthralgias and psoriasis with possible OA as well as inflammatory arthritis. Dr. Short noted the prior laboratory testing was negative for autoimmune findings, though x-rays were consistent with degenerative arthritis. Dr. Short suggested a Medrol Dosepak with repeat laboratory testing.

Previously, on first reconsideration, the following information was reviewed and considered:

From October 2011 through December 2011 Dr. Lipscomb reported Ms. Glenn's complaints of bilateral knee pain after falling on October 11, 2011. Ms. Glenn was treated with a home exercise program (HEP) and over-the-counter (OTC) medications. On December 20, 2011 Dr. Lipscomb's impression following his evaluation was a meniscus tear.

The January 3, 2012 MRI of the right knee revealed suspect small posterior horn tear of the medial meniscus and chondromalacia in patellofemoral joint.

On May 17, 2012 Dr. Lipscomb documented Ms. Glenn's complaints of bilateral knee, elbow, and wrist, left shoulder, and low back pain. Ms. Glenn indicated two falls, on March 8, 2011, and October 16, 2011, injuring these areas. The December 2011 MRI indicated a medial meniscus tear on the left with PT and x-rays requested.

The February 18, 2013 lumbar spine magnetic resonance imaging (MRI) revealed no significant abnormalities.

The June 13, 2013 wrist and hand x-rays revealed early OA of the interphalangeal joint (IP). The June 13, 2013 elbow x-ray noted no significant abnormalities. The June 13, 2013 laboratory testing documented no significant abnormalities.

On June 13, 2013 Dr. Randall Stavinoha reported Ms. Glenn's symptoms of myalgias, elbow and wrist pain, noting a six year history of pain. The physical examination documented normal range but discomfort to palpation at the elbow. The treatment plan was conservative management and referral to a rheumatologist. Subsequently, on July 22, 2013 Dr. Stavinoha again reported Ms. Glenn's pain complaints with negative x-ray assessment and electro diagnostic studies. Dr. Stavinoha recommended conservative management with only medication usage prescribed.

On September 5, 2013 orthopedist Dr. William Hayes noted Ms. Glenn's low back pain which she reported radiated to the buttocks. The physical examination documented normal strength, reflexes, and sensation. The x-rays demonstrated spondylosis with a MRI to be performed.

The September 25, 2013 electro diagnostic testing revealed a normal study with no evidence of mononeuropathy, radiculopathy, or myopathy.

On October 23, 2013 Dr. Johnson noted Ms. Glenn's complaint of gradual onset of pain in all areas including knee, elbow, and back pain. The examination noted normal range, no significant tenderness, and no significant joint deformities. The neurological examination was normal with symmetric reflexes documented. Ms. Glenn appeared to have OA of the hands with home therapy suggested for the epicondylitis and medications suggested for the knee and back pain.

On December 5, 2013 Dr. Thomas Cheyne noted Ms. Glenn's reported multiple areas of discomfort. Ms. Glenn noted she was unable to work because of her hand and wrist pain with numbness. Ms. Glenn indicated she awakened with numb hands. Dr. Cheyne noted the nerve conduction studies (NCS) were negative. The examination reported a negative Tinel but positive Phelan test. Dr. Cheyne opined Ms. Glenn had minimal tenderness at the elbows with full range of motion (FROM). The December 5, 2013 bilateral elbow x-rays indicated normal studies. Dr. Cheyne also indicated the NCS was to be repeated.

On January 31, 2014 Dr. James Kelly documented Ms. Glenn's symptoms of numbness in both hands. Ms. Glenn reported the symptoms had been progressively worsening with involvement of all her fingers with the left hand worse. Ms. Glenn had a positive Tinel and Phalen sign. It was recommended Ms. Glenn's electro diagnostic studies should be repeated. Dr. Kelly opined Ms. Glenn appeared to have CTS.

On February 11, 2014 Dr. Lipscomb noted Ms. Glenn's complaints of bilateral knee pain. Ms. Glenn reported a left anterior cruciate ligament (ACL) reconstruction and medial meniscal tear in the past. A steroid injection was done into the right knee.

The February 25, 2014 repeat electro diagnostic testing revealed mild slowing of the right median nerve across the wrist with no other significant abnormalities.

The March 17, 2014 testing reported mildly elevated sedimentation (SED) and uric acid rates. At the March 27, 2014 office visit, Dr. Cheyne noted the February 8, 2013 MRI demonstrated a disc bulge at lumbar (L)2 through L3 with mild foraminal stenosis at L3 through L4. Ms. Glenn's ambulation was normal, though there was tenderness across her low back. The examination reported Ms. Glenn was able to heel and toe walk. Dr. Cheyne reported normal sensory and motor .

function with equal reflexes. Ms. Glenn's straight leg raise (SLR) was mildly positive and Dr. Cheyne recommended an epidural steroid injection (ESI).

On April 15, 2014, Dr. Cheyne indicated Ms. Glenn had three months of pain in her right knee. Dr. Cheyne noted Ms. Glenn's history of left knee pain with an ACL tear and surgery in 2004. Ms. Glenn reported difficulty with weight bearing, walking, and climbing stairs with the prescribed medication not helpful. Ms. Glenn also reported she felt her knees wanted to buckle suddenly. The x-rays demonstrated lateral compartment narrowing and hypertrophic osteoarthritic changes. Dr Cheyne opined Ms. Glenn had bilateral moderate OA of the knees, though the examination noted no instability but some crepitus. It was noted Ms. Glenn would consider injections and Dr. Cheyne also recommended weight loss.

On May 29, 2014 Dr. Evans noted Ms. Glenn's complaints of bilateral hand and wrist pain and numbness. The physical examination reported normal cervical range and negative Spurling, and normal upper extremity strength and a negative Tinel sign, though the Phalen sign was positive, bilaterally. Ms. Glenn's range of motion (ROM) was normal and her sensation was bilaterally decreased in the median nerve distribution. The x-rays demonstrated very mild degenerative changes in the thumb carpometacarpal (CMC) joint. Dr. Evan's impression was bilateral CTS and noted Ms. Glenn was to be scheduled for initial left procedure and then a right procedure if she elected surgery.

On June 26, 2014 Dr. Branum documented Ms. Glenn's two-year history of joint pain, possible median or ulnar neuropathies, and fatigue. Dr. Branum noted a prior rheumatology workup was negative. Ms. Glenn also reported a history of sleep apnea, multiple arthroscopic procedures on the left knee and left elbow. There is also a history of an ankle fracture and deep vein thrombosis (DVT). The physical examination noted good range of motion (ROM) at all joints with no significant tenderness. There was minimal tenderness at the medial epicondyle. The neurologic examination was normal with x-rays indicating OA of the knees. Dr. Branum diagnosed myofascial pain and suggested a trial of the medication Lyrica. Ms. Glenn was encouraged to remain active in exercise with physical therapy (PT) as an option. The June 26, 2014 lumbar x-ray indicated minimal degenerative changes of the sacroiliac (SI) joints and degenerative changes of the facet joints at L4 through L5. The June 26, 2014, and July 23, 2014 laboratory results indicated no significant abnormalities noted.

Although Ms. Glenn reports physical limitations which interfere with her ability to perform the duties of her own occupation, the medical evidence only supports medically necessary restrictions and/or limitations regarding her chronic osteoarthritic changes to her knees. Based on our clinical review of the additional information, in conjunction with the previous medical data, Ms. Glenn has medically necessary restrictions of no prolonged standing or walking, no frequent lifting over 25 pounds, and no lifting over 50 pounds. Ms. Glenn would not be restricted from frequent squatting and kneeling. Although Ms. Glenn indicates she wears a splint at night, the medical evidence does not support any clinical findings as it pertains to CTS. The electro diagnostic studies have essentially been negative and clinical examination reports did not indicate findings of CTS, which was opined by Dr. Branum. Ms. Glenn's documented inflammatory markers are not significant noting a mild elevation of her erythrocyte sedimentation rate (SED) rate. In addition, Ms. Glenn's immunoglobulin elevation was minimal and is not considered diagnostic or specific.

While Dr. Randal Stavinoha indicated Ms. Glenn should limit lifting and repetitive movements which included writing and typing and any aggravating activities, these restrictions and/or limitations are not supported by the medical evidence. The medical evidence does not contain any physical findings which would require restrictions and/or limitations beyond those identified above. Ms. Glenn did not have significant findings on diagnostic studies other than the presence of some chronic osteoarthritic changes and did not have evidence of an inflammatory arthritis.

Ms. Glenn did not have evidence of joint deformities or muscle atrophy and did not have clinical evidence of significant CTS which would require any restriction in her ability to write or type.

While Dr. Randall Johnson indicated OA and movement caused pain in the joints rendering Ms. Glenn unable to work until she feels able; these restrictions and/or limitations are not supported by the medical evidence. These restrictions and/or limitations were based on Ms. Glenn's complaints and not on any specific clinical examination or diagnostic findings. Dr. Johnson limited Ms. Glenn's ability until she feels able to do so.

Regarding Ms. Glenn assertions she has consistently followed through with her physicians; Ms. Glenn does not have specific orthopedic problems requiring specialists for different joints. Ms. Glenn is not going for joint surgery or replacement; and has mainly arthralgias and myalgias. Ms. Glenn has had recommendations made in regards to using medications for her arthritis by Dr. Branum; however, she did not want to follow through with this recommendation. Ms. Glenn has had other medications recommended, but indicated she did not tolerate them or did not improve with them. The clinical review noted Ms. Glenn has not followed through to a greater degree with any specific physician on an ongoing basis for a specific treatment program. Dr. Branum stated he only saw Ms. Glenn sporadically and therefore, cannot make any further recommendations.

It was reported that Ms. Glenn's elevated immunoglobulin A levels which can be caused by chronic pain; Ms. Glenn only had a very mild elevation of immunoglobulin A levels. Dr. Branum indicated he performed follow-up studies which were negative. Dr. Branum considered this a nonspecific finding and not significant and does not cause disability or require medically necessary restrictions and/or limitations.

There was indication of recommended surgery for the right knee and use of braces for epicondylitis on each elbow and splints for the carpel tunnel syndrome on both hands. The clinical review opines the physical and diagnostic testing support restrictions and limitations identified above for Ms. Glenn's knee issues. The medical evidence does not support Ms. Glenn has significant findings for CTS or epicondylitis; therefore, use of any braces are not dispositive for finding medically necessary restrictions and/or limitations.

In reference to the biopsy which supported diagnoses of psoriasis and psoriatic arthritis; the clinical review concurs Ms. Glenn has a patch of psoriasis on her scalp, but did not have any clinical findings of psoriatic or inflammatory arthritis. The lab studies are not consistent with inflammatory arthritis and there were no physical findings which required medically necessary restrictions and/or limitations other than those identified above. It is noted psoriasis is quite commonly seen without any corresponding arthritic conditions; however, given Ms. Glenn's lack of inflammatory markers or lab abnormalities; lack of any clinical abnormalities on examination including any joint abnormalities; as well as her decision to not take any medication for possible psoriatic arthritis, this would not be considered a significant issue or problem that would require any intervention or medically necessary restrictions and/or limitations. Dr. Branum has concurred with this assessment.

Regarding the sentence on page six in the October 24, 2014 letter which states: "The medical records do provide evidence of significant findings which would prevent using your hands for handling or fingering or sitting for prolonged periods"; please note this was a typographical error. A review of the medical evidence, including the clinical opinion noted only restrictions and/or limitations of no prolonged standing or walking or frequent lifting over 25 pounds and no lifting over 50 pounds. The clinical evidence did not provide significant findings on examination or diagnostic testing. Further, the medical evidence and the clinical opinion did not find significant findings regarding CTS. The October 24, 2014 letter analysis consistently found no functional impairment requiring restrictions and/or limitations other than these identified above. The one

erroneous statement stating "significant findings" does not negate the overwhelming medical evidence to the contrary.

To give Ms. Glenn's every consideration; the Physician Reviewer contacted Dr. Branum and discussed her file on July 2, 2015. Dr. Branum stated that Ms. Glenn has a patch of psoriasis and arthralgias. Dr. Branum noted Ms. Glenn may have psoriatic arthritis, although she does not have any significant inflammatory markers and her autoimmune studies were negative. Further, Ms. Glenn does not have any clinical findings of psoriasis. Dr. Branum noted Ms. Glenn has joint pain complaints as well as the patch of psoriasis and thus entertains this possibility, but is unable to prove it. Dr. Branum suggested medications for this possible condition, but Ms. Glenn deferred taking it; therefore, he did not feel her pain complaints are that significant. While noting no psoriatic arthritis, Dr. Branum did have a body scan done which revealed bilateral findings in the shoulders, knees, hips, and wrists, although the wrists are not commonly seen with OA/osteoarthrosis. Ms. Glenn also had some injuries in these areas, which may be contributing. Ms. Glenn did have some increased uptake in the SI joints and the lumbar spine indicating some chronic osteoarthritic changes as well. Dr. Branum gave Ms. Glenn restrictions of lifting at 20 pounds and avoiding frequent bending, kneeling or crawling because of these findings on the bone scan. Dr. Branum reported Ms. Glenn did not have any significant findings otherwise in the hand.

Dr. Branum did not see any clinical findings of CTS, although Ms. Glenn indicated to him in her history that she had this condition. Dr. Branum did not notice any changes in her hands of OA, osteoarthrosis, or inflammatory arthritis; and he has not noted any joint changes or swelling. Ms. Glenn's labs have been negative and her SED rate minimally elevated. Dr. Branum noted Ms. Glenn had a very minimally elevated immunoglobulin A and did follow-up studies on her in regards to this, which were negative. Therefore, Dr. Branum considered it a nonspecific finding. Dr. Branum opined Ms. Glenn has some type of fibromyalgia and OA/osteoarthrosis because of her ongoing pain complaints. The Physician Reviewer considered Dr. Branum's opinions and comments but did not find the information changed his opinion regarding Ms. Glenn's functional capacity and any medical restrictions and/or limitations.

In addition, you reported on behalf of Ms. Glenn her occupation was not accurately assessed by Prudential, noting we incorrectly stated that data entry services were discontinued two years prior to the last day work. Ms. Glenn indicated she has always provided data entry work as well as bank reconciliation, credit card reconciliations, payroll reports, sales tax return, entered deposits, checks and accounts payable/receivable and 1099s and W-2 for her clients. The last year prior to disability she no longer provided the services of helping client's pack up year end file or their offices due to her inability to lift heavy boxes and the bending and stooping involved.

On second reconsideration, we completed a Vocational Assessment of Ms. Glenn's occupation of Bookkeeper. In the normal economy Bookkeeping/CPA positions are typically performed within a sedentary physical demand level (PDL). In the telephone conversation with Ms. Glenn on October 14, 2014 regarding her occupational duties, she reported she spent 80% of the time sitting and 20% of her time standing and/or walking. Ms. Glenn also indicated she would lift stacks of records and files, usually around five to eight pounds or less which is consistent with the definition of sedentary work.

Ms. Glenn also reported in her occupation she would sometimes help clients pack up their office or put information into storage two to three times per year. Ms Glenn also reported she only performed bookkeeping work for the last two years prior to her disability as she felt she could not lift and did not assist clients with stacking or moving records into storage. The Vocational Assessment opines that lifting more than 10 pounds to assist clients with packing up offices or moving things to storage units would not be considered a material and substantial duty of the occupation as it was only performed two to three times per year and was reasonably omitted for the past two years. In addition, lifting of files can be performed without lifting more than 10

pounds, as files can be lifting singularly and do not require lifting whole boxes or stacks at one time in order to perform the material and substantial duties of the occupation. We also note the standard weight of a box of copy paper is 20 pounds. The restrictions and/or limitations identified above of no frequent lifting over 25 pounds and no lifting over 50 pounds would not prevent Ms. Glenn from performing her own occupation.

As indicated above, we acknowledge Ms. Glenn has some medically supported restrictions and/or limitations outlined above. However, the available medical evidence does not support an inability to perform the material and substantial duties of Ms. Glenn's own occupation, including data entry or moving boxes, within those restrictions and/or limitations identified. Further, any moving or lifting of files would not be considered material and substantial since it was only performed two to three times per year and was not completed for the prior two years; it also is proof these duties could have been and were "reasonably omitted or modified" under the policy.

We conclude the decision to disallow Ms. Glenn's claim for LTD benefits was appropriate and is being upheld on second and final reconsideration.

This decision is final and cannot be appealed further to Prudential.

If you have questions about our decision on your claim, you may call the number listed above. If you wish to check the status of your claim, you may access our *website* at the address listed above, or call our *Interactive Voice Response System* at the number listed above.

Sincerely,
*Kevin L Carder*
Kevin L Carder
Sr. Appeals Analyst

Max Duration: 12/31/2024
Gainful occ date: N/A
Branch Assignment Reviewed: Yes
LTD Service Date? 3/12/2014
Certificate in File? Yes
ERISA/NonERISA: NonERISA
ST State? AR
If ET State, Please list any modifications required:
Does the policy have the following exclusions?
Pre-Existing cond.:
Pre-Ex period dates:
Prudent Person Pre-ex: No
Work-related? No
Self-Inflicted? Yes
War? Yes
Does the policy have the following limitations?
MN/Limit? Y
Self Reported Symptoms? N
Partial Disability? rehab status
Zero Day Residual? N
RTW Incentive? N
ADDITIONAL BENEFIT PROVISIONS?
CAT Branch applicable?
Critical Illness Branch applicable?
Mandatory Voc Rehab:
Rehab Incentive?
Spouse Care?
Elder Care?
Day Care?
Education Benefit?
Offsets Coded?
OFFSET INFORMATION:
Primary Social Security status: No
If ee has applied, has the offset screen been updated?
Family Social Security status: No
Worker's compensation Status: No
If Buy-Up Branch, Core offset applied?
Statutory offset applied: No
Retirement: No
Dap 3?
STD:
Sal Cont:
3rd Party liability?

| 3 ANALYSIS: | Medical summary known to date by information in file: Clmt 55 yo CPA oow 6/1/2013. LTD in bx = 8/31/2013. clmt reports OA, epicondylitis, torn meniscus in both knees. Clmt reports that she can't write or use computer for hours on end, can't walk up and down stairs, can't sit for long periods of time. APS completed by Dr. Stavinoha indicates oa, UE and lat. epicondylitis elbow. AP notes clmt had EMG 9/5/2013 and Xrays 6/13/2013 - bilateral elbow/hand/ wrist. APS completed by Dr. Johnson (Rheum) indicates OA. Rx noted as conzip 100 mg qd. Also see 1/31/2014 TPC with Clmt. |

| 4 PLAN: | Triage |

| SOAP Date: | 02/03/2014 |
| Claim Manager: | Martinovich, Jennifer |
| CATEGORY: | Claim Mgmt |
| REASON: | Triage prep |

| 3 ANALYSIS: | ****Why are you bringing claim to FCD/Triage?

Clarify next steps. |

EXHIBIT

H

tabbies

 **Prudential**

Jennifer Martinovich
Disability Consultant

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718
Fax: (866) 285-8569
Website: www.prudential.com/link2benefits

AICPA Insurance Trust
Bob Silva
Aon Insurance Services
159 East County Line Road
Hatboro, PA 19040-1218

March 11, 2014

Claimant: Rebecca A. Glenn
Claim No.: 11935522
Date of Birth: 3/13/1958
Control No./Br.: 16430 / 00002

Dear Mr. Silva:

We have completed our review of Rebecca A. Glenn's claim for Long Term Disability (LTD)
benefits under the Group Policy No. 16430 issued to AICPA Insurance Trust. Based on our
review, we have determined that benefits are not payable under the terms of the Group Policy at
this time.

Under separate cover, we have written and advised Rebecca A. Glenn of our determination and
because of the confidentiality of her medical condition we are unable to share this information
with you.

If you have any questions, please contact me at (800) 842-1718, extension 87161.

Sincerely,

*Jennifer Martinovich*
Jennifer Martinovich
Disability Consultant



EXHIBIT
*I*